EVERETT G. BALLOU ET AL., APPELLANTS, V. JOHN BLACK ET AL., APPELLEES.

17 389
21 147
24 120
17 389
32 422
17 389
35 283
17 389
48 873
17 389
50 529
52 247
17 389
d59 110

1. **Constitutional Law**: AMENDMENT OF MECHANIC'S LIEN LAW. The act entitled "An act to amend chapter 42 of the General Statutes of Nebraska, entitled 'Mechanics' Liens,'" approved February 28, 1881, examined, and, *Held*, Not inimical to the provisions of section 11, of article 3, of the constitution, which is in the following words: "No bill shall contain more than one subject, and the same shall be clearly expressed in its title. And no law shall be amended unless the new act contains the section or sections so amended, and the section or sections so amended shall be repealed." Nor is the said act affected by any irregularity attending its passage through the various stages of legislation.

2. **Mechanic's Lien**: APPORTIONMENT OF LIEN. The building contracted for and erected being a unit, and the contract for its erection containing a convenient method of apportioning its cost between the two owners, the same will be adopted by the court as a proper method of apportioning the lien upon the separate lots upon which it is situated.

3. ———: DELIVERY OF MATERIALS AT DIFFERENT DATES. The lumber furnished by plaintiff for the erection of defendants' building was delivered in five parcels of nearly equal value— one on the 12th, one on the 14th, one on the 17th, one on the 20th, and one on the 28th days of September, and the sworn statement for lien was filed for record on the 25th day of November of the same year; *Held*, That the same constituted but one delivery, and that the lien was filed in due time to cover the whole.

4. ———: PAYMENTS BY CONTRACTOR. All payments of money made by the contractor to the plaintiffs or their executor on general account, or the application of which were not made by him, and which were received after the first delivery for defendants' building, should be apportioned between the several accounts of plaintiffs for lumber by them furnished for the several buildings of the said contractor then in course of construction, in proportion to the amount due and remaining unpaid for each at the time of each such payment.

APPEAL from the district court of Cass county. Heard below before POUND, J.

*A. C. Wakeley* and *R. S. Hall,* for appellants.

*R. B. Windham* and *A. Beeson,* for appellees.

COBB, CH. J.

This cause was tried to the district court, which found for the defendants and rendered a judgment dismissing the action and sending the defendants hence without day. The grounds of such finding and decision are not stated in the judgment, nor are they apparent to this court upon an inspection of the record. It is stated, however, in the brief of counsel for appellants, that the decision was based upon the first point urged by the defendants in that court, to-wit: That the act of the legislature, approved February 28, 1881, entitled "An act to amend chapter 42 of the General Statutes of Nebraska, entitled mechanics liens," was void as being in conflict with the provisions of the constitution of the state.

In the argument in this court, counsel for appellees seek to attack the constitutionality of the act; first, by citing a part of section 11 of article 3 of the constitution, as follows: "Section 11.   *   *   *   No bill shall contain more than one subject, and the same shall be clearly expressed in the title. And no law shall be amended unless the act contains the section or sections so amended, and the section or sections so amended shall be repealed." It is objected to the act under consideration, that it "does not purport to be an amendment of any existing law, does not refer to or contain any amended section or sections, but purports to be a new bill; and section 15 repeals chapter 42 of the General Statutes, and all other inconsistent acts." I think that it does purport to be an amendment. Probably the words "amend" or "amendment" are not embraced in the body of the act, but that such is the subject of the act is clearly expressed in the title. The clause of the constitu-

tion above quoted is a substantial copy of section 19 of article 2 of the constitution of 1867, which has been often construed by this court. In the case of *The People v. Mc-Callum*, 1 Neb., 182, the effect and meaning of the section was quite thoroughly considered, and the following passage from Cooley Con. Lim., 152, was cited with approval: "It is believed, however, that the general understanding of the provision in question is different," (from the rule expressed in the early cases in Indiana and Louisiana) "and that it is fully complied with, in letter and spirit, if the act or section revised or amended is set forth and published as revised or amended, and that anything more only tends to render the statute unnecessarily cumbrous."

In the case of *Smails v. White*, 4 Neb., 353, in considering the effect of this provision of the constitution, the court say: "That an act *complete in itself* may so operate on prior acts as to materially change or modify them without being within the mischief designed to be remedied by or repugnant to this provision of the constitution is doubtless true," citing · *People v. Mahany*, 13 Mich., 481, and *Davis v. The State*, 7 Md., 152. "But where, as in the case before us, the act is not complete in itself, but in its effect is simply and clearly amendatory of a former statute, it falls directly within the constitutional inhibition and is void. Nor will it make any difference in this respect, whether the new statute by its title or in the body of the act assume to be be amendatory or not; it is enough if it clearly have that effect."

In the case of *White v. The City of Lincoln*, 5 Neb., 505, the court, by Judge MAXWELL, considering the said section of the constitution, say: "The object of this constitutional provision is to prevent surreptitious legislation by incorporating into bills obnoxious provisions, which have no connection with the general object of the bill, and of which the title gives no indication. It will be sufficient, however, if the law have but one general object

which is fairly expressed in the title of the bill." See also opinion by Chief Justice LAKE in *Jones v. Davis,* 6 Neb., 33. Also opinion by Chief Justice MAXWELL in *Sovereign v. The State,* 7 Neb., 408.

The act under consideration is complete within itself, and being amendatory of the entire act known as chapter 42 of the General Statutes, it was not necessary to make special reference to the several sections of said chapter.

The mechanic's lien law, of which the act under consideration is amendatory, although it had been for some time on the statute books of Nebraska territory, was re-enacted as chapter XXXV. of part 1 of "An act for revising, amending, consolidating, and re-enacting the civil and criminal codes and the laws of a general nature of the territory of Nebraska," approved February 12, 1866. The title of said chapter thirty-five in the said act is "mechanics' liens," yet its provisions included the liens of laborers and all persons furnishing any material or machinery for the erection, etc., of buildings, as well as the mechanic who should perform the mechancial work. At the time of this enactment there was no state constitution, so that no question under the constitutional provision which we have been considering would apply to it. The volume known as the General Statutes of Nebraska was not a revision, but simply a republication of the laws made under authority of the legislature. The person authorized to superintend such republication made certain changes in the arranging and numbering of the chapters, so that chapter XXXV. of the re-enactment of 1866 was numbered 42 in the said republication. Whether such rearrangement and renumbering was contemplated by the act authorizing such republication or not, the volume so rearranged and published has been for twelve years recognized by the courts, the legislature, and all departments of the state government as containing the statutes in force at the date of its publication. And I deem it entirely competent for the legislature to amend or

repeal any of such statutes by a proper reference to them by the number of the chapters and sections as therein published. See *Dogge v. The State, ante* p. 140.

Objection is also made to the act under consideration as to the manner in which the bill for its enactment passed the legislature. At the hearing we were all of the opinion that such objection could not be made originally in this court on appeal on error, but that had the journals of the legislature been offered in evidence at the trial in the court below they would be examined and considered here. But having come to the conclusion that there must be a new trial, it is deemed expedient to examine the said objection, and give the views of the court upon the matter therein involved.

It appears by the journals of the legislature that the bill by which this law was enacted was introduced in the senate, and became senate file No. 32, and was entitled "A bill for an act to amend chapter 42 of the General Statutes of Nebraska, entitled 'Mechanics' Liens.'" By this number and title it passed through every stage of legislation in either house, until its final passage in the house of representatives. After the vote had been taken—58 in the affirmative and 26 absent and not voting—the journal continues as follows: "By unanimous consent, the title was amended to read as follows: 'A bill for an act to establish a mechanic's lien law, and to repeal chapter 42, of the General Statutes of Nebraska, entitled "Mechanics' Liens."' A constitutional majority having voted in favor of the passage of the bill, the bill passed and the title was agreed to as amended."

The effect of this proceeding, if it was entitled to have any effect, seems to have been lost sight of by the proper committee and officers of the legislature, as we find that the bill was never returned to the senate for concurrence in the said amendment, but was, on the same day, reported to the senate by the committee on engrossed and enrolled bills

as correctly engrossed by its original title; and by which title it was presented to the governor for his approval, and by which also it was by him approved, and now stands upon the statute book.

In an able article on "Constitutional Regulations of Legislative Proceedings," published in the *American Law Register* for March, 1885 (Vol. 24, No. 3), the writer says: "A slight change in the title of a bill will not invalidate the readings it had before the change was made. If the identity of the bill can be ascertained from the journals, and the change is not one of substance, and apt or calculated to mislead, the validity of the act will not be affected," citing *Larrison v. Peoria, etc., Railroad Co.*, 77 Ill., 11. *Walnut v. Wade*, 103 U. S., 683. *Plummer v. People*, 74 Ill., 361. *Supervisors v. Heenan*, 2 Minn., 281. While these authorities shed some light on the question involved in the case at bar, they cannot be said to conclude it.

While I am unable, in the limited time at my disposal, to find any authority to that effect, it has always been my understanding that even without a constitutional provision in regard to the title to bills, it was incompetent for either house of the legislature to amend or in any manner change the title of a bill which originated in the other. And when we consider the important office and purpose of the title, under the provisions of our constitution hereinbefore quoted, it must be apparent that any attempted change of the title, after the bill has gone through all the stages of legislation proper, cannot be upheld as within the constitutional legislative power. But as the said attempted amendment was not acted on by the committees or officers of the legislature, and as the bill was enrolled, presented to the executive, and approved with the identical title under which it had passed through every other stage of legislative action, I think that the law is unaffected by such attempted amendment.

If the views above expressed are correct, then it is un-necessary to enquire whether the title to the act or chapter of the general statutes amended by the act of 1881 is suffi-ciently broad to include the liens of material men under the provisions of section 11, of article III. of the consti-tution, or not. The statute being older than the constitu-tion is not affected by its provisions in that respect.

2. It may be true that the contract for the erection of this building or block, as entered into between the trustees of the church and John Black and William Wincitt, is a several contract as between the parties to it; but the lia-bility of the owners of the building or block for labor upon or material furnished for the same is necessarily a joint li-ability in the very nature of the case. The lumber, brick, and other material, when delivered at the site of the build-ing, was not designated as for that part of the building owned by the church, or that owned by Dr. Black, but for the building generally; and as shown by the evidence of the foreman and workmen was applied and used indiscrim-inately upon either part of the building. Having exam-ined with considerable care the numerous and somewhat conflicting cases cited by counsel on either side, I do not think there is much real difficulty in this case upon the point now under consideration. The defendants, each own-ing lots coterminous with each other, determined and, I think myself safe in presuming, agreed together to build a block of buildings thereon, locating the same so that that part of it which should stand upon the lot owned by the church should contain such halls, rooms, and apartments as should be suitable and appropriate to its uses and pur-poses, and that part of said block which should stand upon the lot of Dr. Black should constitute such halls, rooms, and apartments as should be suitable to his wants and pur-poses, and estimating that the cost of such building would be twelve thousand one hundred dollars, and the propor-tion of such cost between the said owners five thousand

one hundred dollars to the former, and seven thousand dollars to the latter; and it appears from the copy of the contract contained in the bill of exceptions that they contracted with William Wincitt to pay him for the labor and material entering into the erection and completion of the said building the gross sum, and in the proportion as between themselves as above stated.

It is also in evidence that the labor and material entering into the construction of said building was, so far as the same was paid for, paid by the said owners in the proportion of five-twelfths by the trustees of the church, and seven-twelfths by Dr. Black, they seeming to postpone the consideration of the odd one hundred dollars to a future adjustment.

This arrangement, and practice under it, by the parties themselves, furnishes a rule by which the court will be governed in apportioning and adjusting the lien between and upon the two several lots upon which the said building stands for whatever sum may be found due to the plaintiffs for material furnished for the erection of such building.

3. According to the bill of particulars and account of the plaintiffs, the material for which they seek to recover a lien was delivered at five several and different dates, to-wit: on the twelfth, fourteenth, seventeenth, twentieth, and twenty-eighth days of September, 1881, and the sworn statement thereof was filed for record in the office of the county clerk on the 25th day of November of the same year. Section 2, Comp. Stat., Ch. 54, provides as follows: "Any person or subcontractor who shall perform any labor for, or furnish any material, or machinery, or fixtures for any of the purposes mentioned in the first section of this act, to the contractor or any subcontractor, who shall desire to secure a lien upon any of the structures mentioned in said section may file a sworn statement of the amount due him, or them, from such contractor, or subcontractor, for labor or

material, machinery or fixtures, together with a description of the land upon which the same were done or used, within sixty days from the performing of such labor or furnishing such material, machinery, or fixtures, with the county clerk of the county wherein said land is situated; and if ·the contractor does not pay such person or subcontractor for the same, such subcontractor or person shall have a lien for the amount due for such labor or material, machinery, and fixtures, on such lot or lots, and the improvements thereon, from the same time and in the same manner as such original contractor, and the risk of all payments made to the original contractor shall be upon the owner until the expiration of the sixty days heretofore specified. And no owner shall be liable to any action by the contractor until the expiration of said sixty days, and such owner may pay such subcontractor or person the amount due him from such contractor for such labor and material, machinery and fixtures, and the amount so paid shall be held and deemed a payment of such amount to the original contractor," etc.

One of the counsel for defendants makes the point that under the provision above quoted the lien of plaintiffs could in no event cover more than one delivery of lumber, as contained in the bill of particulars, the other four deliveries having been made more than sixty days prior to the filing of the lien. Counsel cites three New York cases where quite similar language has been construed as contended for by him. Yet, with great respect for the authority of the courts of that state, I do not think that the language or the spirit of the statute will enable us to follow that construction. The law on this subject, which existed through nearly all of our territorial life, and under the state government up to 1881, contained a provision limiting the time within which a lien could be filed, using language almost identical with that which we are now considering, except that the limitation under that law was four

months, the same as in section 2 of the present act. Under that act the question which we are now considering often came before the district courts, where it was uniformly held that the *completion* of a job or term of mechanical labor, or of the delivery of material or machinery for a building, was the point of time at which the four months began to run. And while the point never came before the supreme court, I have but little doubt of the correctness of such holding. The time within which the whole of the lumber was delivered according to the plaintiff's bill was reasonable and as to time should be treated as one delivery.

4. It appears that the plaintiffs' assignor had several accounts for lumber furnished for several buildings being constructed under different contracts by William Wincitt at the same time with the furnishing of the said lumber for the building of the defendants, and that during the said time the said Wincitt made payments of money on his account, generally to the plaintiff's assignor, without applying such payments upon any particular lumber, or upon that furnished for any particular contract. While, as a general principle, in cases of such payments, the party receiving them would have the right to apply the money on such concurrent account as he sees fit, yet under the peculiar circumstances of this case, and it appearing that at the time of the failure of said Wincitt such payments had been credited to the general account between said Wincitt and the plaintiff's assignor, we think that the defendants are entitled to a pro rata distributive share of all money paid by said Wincitt to the assignor of the plaintiffs' executor, or his assignor, or to the plaintiffs themselves, after the commencement of the delivery of lumber by him or them for the building of the defendants. Such money to be applied pro rata upon the amount due for lumber delivered for and charged to said Wincitt and then due plaintiffs, for each building then in course of erection by him or under contract with him, in proportion

to the amount due on each at the date of each several payment.

The judgment of the district court is reversed and the cause remanded for further proceedings in accordance with law and this opinion.

REVERSED AND REMANDED.

THE other judges concur.