IN RE HOUSE ROLL 284.

[FILED MARCH 10, 1891.]

1. **Taxes**: CONSTITUTIONAL LIMIT. Under sec. 5, art. 9, of the constitution county authorities cannot assess taxes the aggregate of which shall exceed one and a half dollars per one hundred dollars valuation, unless authorized by a vote of the people of the county.

2. **County Warrants**: CANNOT BE ISSUED BEYOND STATUTORY LIMIT. As under the present statute each warrant must specify the amount levied and appropriated to the fund upon which it is drawn, and the amount already expended of such sum, and any warrant drawn after seventy-five per cent of the amount levied for the year is exhausted, where there are no funds in the treasury for the payment of the same, shall not be chargeable against the county, it will be impossible for any county to issue warrants in excess of the amount authorized by the statutes now in force without amending such statutes.

3. **Statutes**: AMENDMENT: CONSTITUTIONALITY. An act not complete in itself, but clearly amendatory of a former statute to which it does not refer, is within the constitutional inhibition and void. (*Smails v. White*, 4 Neb., 353; *Sovereign v. State*, 7 Id., 409.)

4. **County bonds**: ISSUE: SUBMISSION TO PEOPLE. The legislature has authority to pass a law to authorize the county board of any county of the state "to issue bonds of the county to an amount not exceeding three per cent of the assessed valuation of the county for the year 1890, and not exceeding the sum of $20,000, for the purpose of raising money to purchase grain to be planted and sown for the purpose of raising crops for the year 1891, and for feeding teams used in raising said crops." The question of issuing such bonds must be submitted to the people

in the mode provided in sections 27 and 28, art I, chap. 18, Compiled Statutes, and they cannot be issued on a mere petition for the issuance thereof signed by a majority of the electors of the county.

5. **Special Legislation.** Under sec. 15, art. 3, of the constitution no special law can be enacted where a general law can be made applicable.

QUÆRE submitted by house of representatives.

*M. B. Reese, amicus curiæ.*

*Church Howe,* and *C. D. Shrader,* for the constitutionality of the propositions involved in the *quære.*

*Geo. H. Hastings, Attorney General, contra.*

MAXWELL, J.

The following resolutions were, on the 3d day of March, 1891, submitted by the honorable house of representatives to this court:

"WHEREAS, The constitutionality of house roll No. 284 is being seriously questioned on account of the form in which it is pending in the house, for the reasons as hereinafter set forth:

"*Resolved,* That the said house roll No. 284 be submitted to our honorable supreme court for an opinion as to constitutionality of said bill, with reference to the following questions:

"First—Can counties in this state be authorized and empowered to issue and draw warrants on the general fund of the county in excess of the amount now authorized by law, not to exceed ten per cent of the grand assessment roll of each of said counties, to purchase seed grain for the settlers, and provide for their immediate wants of food, fuel, and clothing, the same to be issued by the respective boards of supervisors of the several counties, or the county commissioners as the case may be; the said funds raised

by issuance of warrants upon the general fund herein provided to be issued under the provisions of an act entitled "A bill for an act for the relief of the people in the drouth-stricken district of Nebraska, to aid in feeding and clothing said people, and to provide a method for the distribution of the aid herein provided for the drouth-stricken inhabitants," passed by the present session of the legislature?

"Second—Would or would not the provisions of said bill be in violation of sec. 2, art. 12, of the constitution of the state of Nebraska, the same not having been submitted to the qualified electors of the said counties respectively, at an election called and authorized by law for such purpose?

"Third—Can the board of any county of this state have authority to issue bonds of their respective counties to an amount not exceeding three per cent of the assessed valuation of the county for the year 1890, and not exceeding the sum of $20,000, for the purpose of raising money to purchase grain to be planted and some for the purpose of raising crops for the year 1891, and for feeding teams used in raising said crops, it being provided that such bonds shall not issue unless a petition for the issuance thereof shall be first presented to said board signed by a majority of the electors of said county, as shown by the poll books of the general election of the year 1890?

"Fourth—Would or would not the provisions of such act be in contravention of sec. 5, art. 9, of the constitution of the state of Nebraska?"

The questions involved are of considerable importance, and some of them entirely new.

In consequence of the great volume of business before the supreme court and the consequent inability of the judges to devote as much time to the examination of the questions as was desirable in the brief time allowed them for the consideration of the case, the court, therefore,

requested the Hon. M. B. Reese, a former judge of this
court, to act as *amicus curiæ*, and, in connection with the
attorney general, to examine the authorities bearing upon
the questions submitted.   Both gentlemen performed their
labor in a thorough and careful manner, and thereby the
court has been able to reach a conclusion much earlier than
otherwise would have been the case.

The first and second questions will be considered to-
gether.

Sec. 5, art. 9, of the constitution provides that "county
authorities shall never assess taxes the aggregate of which
shall exceed one and one-half dollars per one hundred
dollars valuation, except for the payment of indebtedness
existing at the adoption of this constitution, unless au-
thorized by a vote of the people of the county."   The
proper construction of this section was before this court in
*State v. Gosper County*, 14 Neb., 22, and it was held that
county commissioners could not levy taxes for the payment
of county warrants in excess of the limit fixed by the con-
stitution.   The history of legislation relating to county
warrants in this state is substantially as follows: "Prior
to the year 1859, county warrants were drawn in some of
the counties without regard to the amount of the levy, and
it was alleged greatly in excess of the legitimate claims
against the county.   In the latter year the legislature
passed an act to require each warrant to show on its face
the amount levied and appropriated to the fund upon
which it was drawn and the amount already expended of
such fund."   The act declared it to be unlawful for county
commissioners to issue warrants in excess of the amount
levied by tax for the current year.   This act continued in
force until 1879, when the commissioners were restricted to
fifty per cent of the levy, which, in 1881, was extended
to seventy-five per cent, and it was further provided that,
after the amount levied for the year was exhausted and
there were no funds in the treasury for the payment of the

same, warrants drawn should not be chargeable against the county, but against the county board or any member thereof for the payment of the same.

There are other provisions of statute requiring the county board to make estimates at the regular meeting in January of each year of the necessary expenses of the county during the ensuing year, the total of which shall in no instance exceed the amount of taxes authorized by law to be levied during that year. There is also a provision for submitting to the voters of a county the question of issuing bonds for the payment of warrants or other indebtedness where the ordinary revenue will not be sufficient for that purpose.

It will be observed that the limitation in the constitution as to the amount of taxes which may be levied in any one year is practically a prohibition of the issuing of any considerable number of warrants. In addition to this, in order to authorize the issuing of warrants for the purpose stated, it would be necessary to amend the several sections of the statute relating to warrants.

Sec. 11, art. 3, of the constitution provides that "no law shall be amended unless the new act contains the section or sections so amended, and the section or sections so amended shall be repealed." The proper construction of this section was before the court in *Smails v. White*, 4 Neb., 353; and it was held that where an act was not complete in itself but is clearly amendatory of some former statute it is within the constitutional inhibition. This case was followed and approved in *Sovereign v. State*, 7 Neb., 409, and other cases, and is the settled law of this state.

Leaving out of view, therefore, the propriety of changing laws which have existed for a third of a century for the protection of taxpayers, it was evident that if the law in relation to county warrants is changed so as to permit their being issued without restrictions heretofore named,

still the constitutional inhibition against the levy of taxes in excess of one and one-half per cent is a prohibition upon the granting of relief by the issuing of county warrants.

Second—The third and fourth questions will be considered together.

In considering the power which may be exercised by the legislature it is usual to consider those possessed by parliament, after which to some extent our legislature has been modeled and the parliamentary common law applied. In speaking of parliament Coke says: "It hath sovereign and uncontrolled authority in the making, confirming, enlarging, restraining, abrogating, repealing, reviving, and expounding of laws, concerning matters of all possible denominations, ecclesiastical or temporal, civil, military, maritime, or criminal." (4 Inst., 36.) Judge Cooley, in his valuable work on Constitutional Limitations, says: "It is natural, also, that we should incline to measure the power of the legislative department in America by the power of the like department in Britain, and to concede without reflection that whatever the legislature of the country from which we derive our laws can do, may also be done by the department created for the exercise of legislative authority in this country. But to guard against being misled by a comparison between the two, we must bear in mind the important distinction already pointed out, that with the parliament rests practically the sovereignty of the country so that it may exercise all the powers of the government if it wills so to do, while on the other hand the legislatures of the American states are not the sovereign authority, and though vested with the exercise of one branch of the sovereignty, they are nevertheless, in wielding it, hedged in all sides by important limitations, some of which are imposed in express terms, and others by implications which are equally imperative." (Constitutional Limitations [6th Ed.], 102.)

In this state the powers of the government are divided into three departments, viz., the legislative, executive, and judicial. In creating a legislative department and conferring upon it the legislative power, the people must be understood to have conferred the full and complete power as it rests in, and may be exercised by, the sovereign power of any country, subject only to such restrictions as they may have seen fit to impose, and to the limitations which are contained in the constitution of the United States. The legislative department is not made a special agency for the exercise of specifically defined legislative powers, but is intrusted with the general authority to make laws at discretion. (Cooley's Constitutional Limitations [6th Ed.], 104.) In other words, the legislature has authority to pass laws at discretion, provided such laws are within the constitutional inhibitions, and do not infringe upon the rights of private individuals.

We have been unable to find any provision of the constitution which prevents the legislature from authorizing the electors of a county to vote bonds for the relief of the unfortunates within its borders. A great calamity fell upon a number of counties of this state last year by which a large part of all of the crops was destroyed and the people left in a suffering condition. The soil and climate are excellent, and with proper assistance the citizens of those counties will be able to cultivate their farms, raise crops, and add millions of dollars to the wealth of the counties and of the state. Without this aid many, perhaps a large portion of the people of the counties named, will be unable to cultivate their farms and raise crops. It thus becomes a matter of public concern, and the law may be sustained upon two grounds: first, as a matter designed for public benefit; and, second, as a police regulation to enable persons in straightened circumstances, who, without fault upon their part, have met with misfortune, and are thereby greatly impoverished, to start anew in the cultiva-

tion of their farms with a reasonable prospect of success;
in other words, from being dependent to soon become able
to provide for all their own wants. Each county must de-
termine for itself whether aid is needed, and, if so, within
the provisions of the act to what extent.

Sec. 2, art. 12, of the constitution provides that dona-
tions to works of internal improvement shall not be made
unless a proposition so to do shall have been first submit-
ted to the qualified electors thereof at an election by au-
thority of law. Sec. 5, art. 9, also prohibits the assessment
of taxes which shall exceed one and a half dollars per hun-
dred dollars·valuation, unless authorized by a vote of the
people of the county. In carrying out these provisions of
the constitution, the legislature has provided as follows:

" The mode of submitting questions to the people, for any
purpose authorized by law, shall be as follows: The whole
question, including the sum desired to be raised, or the
amount of the tax desired to be levied, or the rate per an-
num, and the whole regulation, including the time of its
taking effect, or having operation, if it be of a nature to
be set forth, and the penalty of its violation, if there be
one, is to be published for four weeks in some newspaper
published in the county. If there be no such newspaper,
the publication is to be made by being posted up in at least
one of the most public places in each election precinct in
the county, and in all cases the notices shall name the time
when such question shall be voted upon, and the form in
which the question shall be taken, and a copy of the ques-
tion submitted shall be posted up at each place of voting
during the day of election.

" Sec. 28. When the question submitted involves the
borrowing or expenditure of money, or issuance of bonds,
the proposition of the question must be accompanied by a
provision to levy a tax annually for the payment of inter-
est, if any, thereof, and no vote adopting the question pro-
posed shall be valid unless it likewise adopt the amount of

tax to be levied to meet the liability incurred." (Sections 27 and 28, chap. 18, Compiled Statutes.)

Sec. 15, art. 3, provides that "where a general law can be made applicable, no special law shall be enacted." A general law is applicable in the case stated, and therefore a special law will be within the inhibition of the constitution. Bonds must be issued therefore in pursuance of an election lawfully held. This has been the law of this state from its early history. There are many reasons for this. Where an election is duly called and advertised, the reasons for and against the proposition are discussed and considered, and the electors vote upon such proposition as they may deem for their own and that of the county's best interest. The election is open and public, and the friends and opponents of the measure meet upon common ground and by their votes register their preference for or opposition to the proposition. None of these advantages, however, inure in favor of merely signing the petition. In such case the petition is presented to a party who frequently, without due consideration, signs the same, or signs it under representations which he afterwards finds do not conform to the facts. Such a system, as an authority for incurring indebtedness or issuing bonds, is open to many objections and is within the clear inhibition of the constitution. We therefore hold that while a county may be authorized to issue its bonds within certain limits for the purpose indicated, yet the authority must be conferred by a vote of the electors at an election called and held in pursuance of law and not by petition.

THE other judges concur.