STATE OF NEBRASKA, EX REL. FARMERS MUTUAL INSUR-
ANCE COMPANY OF NEBRASKA, V. EUGENE MOORE,
AUDITOR OF PUBLIC ACCOUNTS.

FILED JUNE 16, 1896. No. 8372.

1. **Statutes:** AMENDMENTS: CONSTITUTIONAL LAW. It is only where an act of the legislature is incomplete in itself, but manifestly amendatory of some existing statute to which it does not refer, that it is within the inhibition of the constitutional provision that "no law shall be amended unless the new act contain the section or sections so amended, and the section or sections so amended shall be repealed." (Constitution, art. 3, sec. 11.) If the act is complete in itself it does not violate said provision.

2. ———: ———: ———: INSURANCE. The act of the legislature approved March 30, 1891, entitled "An act to authorize the organization of mutual insurance companies" (Session Laws, 1891, p. 272, ch. 33), is not inimical to said clause of section 11 of article 3 of the constitution, it being an independent and complete law of itself, and not amendatory of a prior statute.

3. ———: TITLES OF ACTS. *Held,* That said act contains but a single subject of legislation, which is fairly expressed in the title.

4. ———: REPEAL BY IMPLICATION. It is only where two statutes on the same subject are so repugnant to each other that both cannot be enforced the last one enacted will supersede the former, and repeal it by implication.

5. ———: UNCONSTITUTIONAL PROVISIONS: VALIDITY OF PORTIONS OF ACT. Where a statute contains provisions which are unconstitutional, if the valid and invalid are not so connected as to be incapable of separation, and the valid portion is a complete act and not dependent upon the part that is void, the latter alone will be disregarded and the rest sustained, if it is manifest that the void part was not an inducement to the legislature to pass the part which is valid.

6. **Insurance:** PREMIUMS: PAYMENT IN CASH: CONSTRUCTION OF STATUTE. The clause of section 8 of the said act of March 30, 1891, which declares that each policy holder shall, "at the time of effecting the insurance, pay such percentage in cash and such other charges as may be required by the rules and by-laws of the company" (Session Laws, 1891, p. 274, ch. 33, sec. 8), construed, and *held* that the word "cash," in the connection employed, means current money, and that the amount, as well as whether any advance payments shall be made by the insured, depends alone upon the rules and by-laws of the company.

State v. Moore.

7. ——: ——: ——. In case the rules and by-laws provide for the payment in money of a membership fee or other charge at the time the insurance is written, the same must be paid in advance in cash, and not by accepting in lieu thereof the promissory note of the policy holder.

ORIGINAL application for *mandamus* to require the auditor of public accounts to issue a certificate authorizing the relator to transact a mutual insurance business in the state of Nebraska.  *Writ denied.*

The opinion contains a statement of the case.

*F. Martin, Thomas Darnall,* and *Lamb & Adams,* for relator:

If an act of the legislature is complete within itself it must stand, though it may be in conflict with former statutes and may so operate on prior laws as to materially change or modify them.  (*State v. Page,* 12 Neb., 386; *Smails v. White,* 4 Neb., 353; *Brome v. Cuming County,* 31 Neb., 362; *State v. Benton,* 33 Neb., 823; *State v. Bemis,* 45 Neb., 724.)

All that the law requires is that the amendatory statute shall be definite and certain as to the statute amended, and germane to the title of the original act.  (*State v. Babcock,* 23 Neb., 128; *State v. Bemis,* 45 Neb., 724.)

The act does not express more than is embodied in the title.  (*Paxton v. Farmers & Merchants Irrigation & Land Co.,* 45 Neb., 884; *State v. Ream,* 16 Neb., 683.)

The auditor had no authority to investigate, in a public manner, the acts and conduct of relator with a view of revoking its authority to do business.   That prerogative is exclusively within a court of competent jurisdiction.  (*Stout v. Zulick,* 7 Atl. Rep. [N. J.], 362; *Greenbrier Lumber Co. v. Ward,* 3 S. E. Rep. [W. Va.], 227; *In re New York Elevated R. Co.,* 70 N. Y., 327; *Leslie v. Lorillard,* 18 N. E. Rep. [N. Y.], 363; *City of South Omaha v. Taxpayers' League,* 42 Neb., 671.)

Reference is also made to the following cases: *State v.*

*Lancaster County,* 17 Neb., 85; *State v. Hurds,* 19 Neb., 323;
*Muldoon v. Levi,* 25 Neb., 457.

*A. S. Churchill, Attorney General, George A. Day, Deputy
Attorney General,* and *H. C. Brome,* for respondent.

*Charles O. Whedon,* contending that the act of March 30,
1891, authorizing the organization of mutual insurance
companies, is unconstitutional, cited the following cases:
*Ryan v. State,* 5 Neb., 276; *Lancaster County v. Hoagland,*
8 Neb., 36; *City of South Omaha v. Taxpayers' League,* 42
Neb., 678; *Jones v. Davis,* 6 Neb., 33; *State v. Page,* 12
Neb., 386; *Herold v. State,* 21 Neb., 50; *Lowe v. Rees Print-
ing Co.,* 41 Neb., 127; *Trumble v. Trumble,* 37 Neb., 340;
Cooley, Constitutional Limitations [5th ed.], 486..

NORVAL, J.

Relator is a mutual insurance company incorporated
under and by virtue of the provisions of the act of the
legislature entitled "An act to authorize the organization
of mutual insurance companies," approved March 30, 1891.
(Session Laws, 1891, p. 272, ch. 33.) It has been doing a
general mutual insurance business in this state for more
than four years, has a membership of about 4,500, and is
carrying insurance of more than $13,000,000. On the
15th day of January, 1896, relator filed with the respond-
ent, auditor of public accounts, an annual statement of its
business for the year ending December 31, 1895, and on
February 1, 1896, and at various times since said date, it
has requested and demanded that respondent issue to
relator a certificate authorizing it to do a mutual insur-
ance business in this state. Respondent having refused
to comply with said request, this action was instituted to
require him to issue to relator a certificate of authority
to transact business. Two matters are presented by the
record for consideration: First—The constitutionality of
the act under which relator was incorporated. Second—
Has relator complied with that part of section 8 of said

act which provides that members of the company shall, "at the time of effecting the insurance, pay such percentage in cash and such other charges as may be required by the rules and by-laws of the company"?

It is contended that the act of 1891, chapter 33 of the laws of that year, is in contravention of that clause of section 11, article 3, of the constitution which declares that "no law shall be amended unless the new act contain the section or sections so amended, and the section or sections so amended shall be repealed." This constitutional provision has been frequently before this court for consideration, and it is a rule well settled that where an act of the legislature is not complete in itself, but is amendatory of a former law to which it does not refer, it is within the constitutional inhibition quoted above. In other words, the fundamental law of the state requires all the parts of an amended law to be incorporated in the act, and the old law so amended to be repealed. If said constitutional provision is disregarded or not complied with in the amendment of a prior act, the new law is void. (*Smails v. White*, 4 Neb., 353; *Ryan v. State*, 5 Neb., 276; *Lancaster County v. Hoagland*, 8 Neb., 38; *Sovereign v. State*, 7 Neb., 409; *In re House Roll 284*, 31 Neb., 505; *Stricklett v. State*, 31 Neb., 674; *City of South Omaha v. Taxpayers' League*, 42 Neb., 671.) It is also firmly established in this state by a long line of decisions that an act complete in itself is not inimical to said constitutional provision, although such act may be repugnant to, or in conflict with, a prior law, which is not referred to nor in express terms repealed by the later act. In such case the earlier statute will be construed to be repealed by implication. (*Smails v. White*, 4 Neb., 353; *Jones v. Davis*, 6 Neb., 33; *State v. Maccuaig*, 8 Neb., 215; *State v. Whittemore*, 12 Neb., 252; *State v. Page*, 12 Neb., 386; *State v. Ream*, 16 Neb., 681; *Ballou v. Black*, 17 Neb., 389; *Herold v. State*, 21 Neb., 50; *State v. Arnold*, 31 Neb., 75; *Brome v. Cuming County*, 31 Neb., 362; *State v. Benton*, 33 Neb., 823; *State v. Bemis*, 45 Neb., 724.)

The rule last above stated is not assailed as being unsound, but it is argued that it is not applicable here, since the law under consideration contains no specific or general repealing clause. That it does not purport to repeal any previous enacted statute in conflict therewith is not an important consideration. Its failure to do so did not make the act incomplete, as suggested by counsel. All prior laws conflicting with the act of 1891 were as effectually repealed by implication as though said act had contained a specific or general repealing provision. In some of the cases above cited statutes were upheld, although some of their provisions were repugnant to existing laws upon the same subject and no repealing clauses were inserted. The act of 1891, under which relator was organized and incorporated, consists of nineteen sections, some of which embody the same subject of legislation at that time contained in chapter 43, Compiled Statutes, entitled "Insurance Companies," and there is an apparent, if not a real, conflict between the provisions of the two laws. Thus, by section 1 of the act of 1891 any number of persons, not less than twenty, residing in the state, who collectively shall own property of the value of $20,000 or over, which they desire to have insured, are authorized to organize a mutual insurance company, while section 3 of said chapter 43 requires at least two hundred persons to form an insurance company on the mutual plan. The mode of organization, as well as the manner of conducting the business, is prescribed in each act, and in many essential particulars the two enactments are contradictory; but in so far as they do conflict, if both laws cannot stand, the provisions of the older act must yield to the latest expressions of the legislative will. The act of 1891 purports to be and it is an independent and complete law within itself, not amendatory of, nor in any manner depending upon, any other statute, and, therefore, under the authorities cited, is not inimical to the constitutional provision quoted above. Said chapter 43, prior to 1891, related to different kinds of insurance companies, among

others, fire and life, stock companies as well as those organized upon the mutual plan, while the act under review deals with mutual companies alone, and authorizes their organization upon terms and conditions different from those specified in said chapter 43, yet it does not follow that the provisions of the old law on the subject of mutual insurance were repealed or superseded by the subsequent statute. Obviously it was the intention of the lawmakers to authorize the formation of two distinct classes of mutual insurance companies, with dissimilar powers conferred and restrictions imposed. The prior law, as already suggested, permits not less than two hundred persons to organize such a company, and the act of 1891 authorizes the formation of companies for mutual insurance by any number of persons not less than twenty. The mode and manner of transacting the business of insurance are differently prescribed by each law, yet it is not discernible why both statutes may not be sustained, and companies be formed for mutual insurance under either. The legislature, by separate and distinct enactments, has provided for the incorporation of cities of various classes. Thus, cities having a population of eighty thousand or more may incorporate as metropolitan cities; municipalities possessing between 25,000 and 100,000 inhabitants are known as cities of the first class; cities of the second class, with a less number of inhabitants, are likewise, also, provided for. The laws relating to the incorporation of the several classes of cities were passed at different times, and distinct powers were given by each enactment. The number of inhabitants generally determines the form of government. If the said act of 1891 is unconstitutional upon the grounds urged, then for the same reason more than one of the several city charters must fall to the ground. A construction which must lead to such consequence should not be adopted unless unavoidable. The conclusion is irresistible that the older enactment relating to mutual insurance companies is not repealed by the subsequent act upon the same subject of legislation.

It is insisted that the act under consideration conflicts with the constitutional provision that "no bill shall contain more than one subject, and the same shall be clearly expressed in its title." (Constitution, art. 3, sec. 11.) An inspection of the entire act discloses that it has but one general object, contains but one subject of legislation, and that is fairly expressed by its title. It is not obnoxious to the constitutional provision quoted. (*White v. City of Lincoln*, 5 Neb., 505; *Hamlin v. Meadville*, 6 Neb., 227; *State v. Ream*, 16 Neb., 681.)

Another contention is that section 11 of the law under consideration is invalid because it provides for the adjustment of losses by three arbitrators, one to be chosen by the claimant, one by the company, and the third by the two persons thus selected, and further, that the award made by them shall be final. It is contended that this provision was inserted to oust the courts of their constitutional jurisdiction, and hence is void and not enforceable. It is not certain that the clause relating to arbitration could have the effect imputed to it by counsel, since by section 14 of the same act it is expressly provided that "Suits at law may also be brought and maintained against any such company by members thereof for losses sustained, if payment is withheld after such losses become due." (Session Laws, 1891, p. 276, ch. 33, sec. 14.) Thus, it would seem that arbitration is not the only means provided for the adjustment of losses, but that their payments may be enforced in the courts by appropriate legal proceedings. Conceding that this is not the proper construction to be placed upon the statute, and the clause relating to arbitration is invalid because it deprives the insured of the right to enforce the payment of his loss in the courts, it does not necessarily follow that the entire law falls to the ground. The rule is where a statute contains provisions which are invalid or unconstitutional, if the valid and invalid portions are not so connected as to be incapable of separation, and the valid part is a complete act and not dependent upon the part that is void, the latter

alone will be disregarded and the remainder upheld. (*State v. Lancaster County*, 6 Neb., 474; *State v. Hardy*, 7 Neb., 377; *State v. Lancaster County*, 17 Neb., 85; *State v. Hurds*, 19 Neb., 323; *Muldoon v. Levi*, 25 Neb., 457; *Messenger v. State*, 25 Neb., 674; *Magneau v. City of Fremont*, 30 Neb., 843.) The main provision of the law under consideration not being dependent on the clause relating to arbitration, the whole act is not void.

Objections have been made to the validity of other sections of the act, but they need not be noticed, since they are disposed of by the foregoing observations.

Section 8 of the act under consideration provides *inter alia:* "All persons so insured shall give their obligation to the company, in a written or printed application, binding themselves, their heirs, and assigns to pay their *pro rata* share to the company of the necessary expenses and of all losses by fire, lightning, or tornado which may be sustained by any member thereof during the time for which their respective policies are written and they continue as members of the company, and they shall also, at the time of effecting the insurance, pay such percentage in cash and such other charges as may be required by the rules and by-laws of the company." (Session Laws, 1891, p. 274, ch. 33, sec. 8.) The rules and by-laws adopted by the relator provide, in effect, that each person becoming a member of the company shall pay in advance a membership fee of $2, and a sum in addition thereto equal to one per cent of the amount of insurance covered by his policy. It is admitted that relator has issued policies of insurance without requiring the payment in advance of the membership fee required by its by-laws, but accepted in lieu thereof the written promises of the parties becoming members. The respondent contends that nothing but cash in advance can be accepted for the percentage and membership fee, while relator insists that it has the right to take notes for the same. It will be observed that the statute requires only such percentage and other charges to be paid when the insurance is written as shall be pro-

vided for in the rules and by-laws of the company. The
amount, as well as whether any advance payment must be
made, depends alone upon such rules and by-laws. If
they exact no cash payment, then none need be paid at
the time the insurance is effected. That this is the import
and meaning of the statute is plain. Here the by-laws
of the company have provided for the payment of certain
charges, a membership fee of $2, besides a percentage of
one per cent. It requires no argument to show that the
legislature contemplated that both of these amounts
should be paid not only in advance of issuing of the
policy, but in actual cash, and not by receiving the note
or other obligation of the policy-holder. If that is not
the purport of the statute, it is meaningless. A note or
other promise to pay is not cash. The word "cash," as
employed in the above statute, means current money.
Relator, under its existing by-laws, exceeded its authority
in accepting notes or other obligations in payment of
membership fees required to be paid in advance, although
it appears that in doing so it acted in good faith, relying
on the opinion of Attorney General Hastings given upon
the subject.

It is urged that the auditor has no right to refuse a cer-
tificate because the relator "has not been tracking the law
in every respect." In this counsel are in error. By sec-
tion 17 of the act of 1891 it is made the duty of every in-
surance company organized and doing business there-
under, on the first day of January of each year, or within
a month thereafter, to file with the auditor a statement
showing the condition of the company on the last day of
the preceding month, and "if, upon examination, he is
of the opinion that such company is doing business cor-
rectly, in accordance with the provisions of this act, he
shall thereupon furnish the company a certificate, which
shall be deemed authority to continue business the ensu-
ing year." (Session Laws, 1891, p. 277, ch. 33, sec. 17.)
It is only in case the auditor finds that the company in
the transaction of its business has complied with the law

that he is authorized to issue his certificate. In making his examination he is not confined alone to the report or statement furnished by the company. The writ must be denied.

.WRIT DENIED.