STATE OF NEBRASKA, EX REL. E. J. CAREY, v. JOHN F. CORNELL, AUDITOR OF PUBLIC ACCOUNTS.

FILED FEBRUARY 3, 1897. No. 8997.

1. **Statutes: AMENDMENTS: CONSTITUTIONAL LAW.** An act complete in itself is not inimical to the constitutional requirement that no law shall be amended unless the new act contains the section or sections so amended, although such complete act may be repugnant to, or in conflict with, a prior law, not referred to nor in express terms repealed by the later act.

2. ———: ———: **STENOGRAPHERS: COMPENSATION.** The act entitled "An act to amend chapter 13 of the Revised Statutes of 1866, entitled 'Courts,'" approved February 27, 1879 (Session Laws, p. 82), was an act complete in itself, and the provisions therein made for stenographic reporters and their compensation were germane to its purposes.

3. ———: ———: ———: ———. The conclusion reached in *Morgan v. State*, 48 Neb., 798, disapproved, and said case overruled.

ORIGINAL application for *mandamus* to compel the auditor of public accounts to issue a warrant for the salary of relator as stenographer of the seventh judicial district. *Writ allowed.*

*N. Z. Snell* and *J. E. Frick*, for relator.

*C. J. Smyth, Attorney General,* and *Ed P. Smith, Deputy Attorney General, contra.*

RYAN, C.

This is an original action by the stenographic reporter of the seventh judicial district of this state to compel the auditor of public accounts to issue a warrant in the sum of $375, for one quarter's salary, under the provisions of an act entitled "An act to amend chapter 13 of the Revised Statutes of 1866, entitled 'Courts' " (Session Laws, 1879, p. 82), approved February 27, 1879. It is insisted by the respondent that section 46 of the act just referred to is unconstitutional, because the said act is amendatory of an act approved February 19, 1877, said last named act not being mentioned in the title of the amendatory act, and that, therefore, the provisions of said act of 1877, which fixed the relator's salary at $250 per quarter, must govern, rather than section 46 of the amendatory act, which fixes it at $375 per quarter, as claimed by the relator. The respondent is willing to issue a warrant for $250, but refuses to issue one for $375, hence this controversy.

Chapter 13, Revised Statutes of 1866, entitled "Courts," made general provisions for a supreme court and for district courts in this state. The jurisdiction of the district courts was defined. Provisions were made for clerks and for terms to be held, for records, proceedings, and other like matters. There was, however, no mention of a stenographic reporter. This officer was first provided for in 1875. By the provisions of section 6 of the act approved February 19, 1877, the yearly compensation of this reporter was fixed at $1,000. By the act entitled "An act to amend chapter 13 of the Revised Statutes of 1866, entitled 'Courts,' " approved February 27, 1879, there was enacted a complete statute providing for district courts, and, among other things, for necessary officers, among whom was a stenographic reporter, to receive an annual salary of $1,500.

It is contended by the respondent that the case of *Morgan v. State*, 48 Neb., 798, is decisive of the questions now urged by the relator, and, therefore, that the writ of *mandamus* to compel the auditor to issue the warrant for $375 should be denied. In *Morgan v. State, supra*, there was under consideration section 49 of the act above referred to as having been approved February 27, 1879, and it was held that this section was unconstitutional and void, because it was amendatory of section 5 of an existing act approved February 19, 1877; the title of the amendatory act in no way referring to or recognizing the existence of the act of 1877. In this case there is urged the fact that the act of 1879 was a complete act providing for and governing courts, and that, therefore, it was not necessary that in its title there should be mention of acts incidentally affected, as was the act of 1877. In *State v. Moore*, 48 Neb., 870, there was under consideration the applicability of section 11, article 3, of the constitution of this state, which declares that "No law shall be amended unless the new act contain the section or sections so amended, and the section or sections so amended shall be repealed." In respect to the constitutional provision just quoted it was said: "This constitutional provision has been frequently before this court for consideration, and it is a rule, well settled, that where an act of the legislature is not complete in itself, but is amendatory of a former law, to which it does not refer, it is within the constitutional inhibition quoted above. In other words, the fundamental law of the state requires all the parts of an amended law to be incorporated in the act, and the old law so amended to be repealed. If said constitutional provision is disregarded or not complied with in the amendment of a prior act the new law is void. (*Smails v. White*, 4 Neb., 353; *Ryan v. State*, 5 Neb., 276; *Lancaster County v. Hoagland*, 8 Neb., 38; *Sovereign v. State*, 7 Neb., 409; *In re House Roll 284*, 31 Neb., 505; *Stricklett v. State*, 31 Neb., 674; *City of South Omaha v. Taxpayers' League*, 42 Neb., 671.) It is also firmly established in this state, by

a long line of decisions, that an act complete in itself is not inimical to said constitutional provision, although such act may be repugnant to, or in conflict with, a prior law, which is not referred to nor in express terms repealed by the later act. In such case the earlier statute will be construed to be repealed by implication. (*Smails v. White*, 4 Neb., 353; *Jones v. Davis*, 6 Neb., 33; *State v. Maccuaig*, 8 Neb., 215; *State v. Whittemore*, 12 Neb., 252; *State v. Page*, 12 Neb., 386; *State v. Ream*, 16 Neb., 681; *Ballou v. Black*, 17 Neb., 389; *Herold v. State*, 21 Neb., 50; *State v. Arnold*, 31 Neb., 75; *Brome v. Cuming County*, 31 Neb., 362; *State v. Benton*, 33 Neb., 825; *State v. Bemis*, 45 Neb., 724.)" In *Omaha Real Estate & Trust Co. v. Kragscow*, 47 Neb., 592, a repeal by implication by reason of inconsistent statutory provisions was held to have resulted between irreconcilable sections of the same statute. In *State v. City of Kearney*, 49 Neb., 325, it was pointed out that in several cases this court had held that the constitutional provision under consideration was applicable to amended subdivisions of a section equally with an entire section. In *Henry v. Ward*, 49 Neb., 392, the principle last above enunciated received a practical application to a condition of legislation very similar to that involved in the present case. To demonstrate this resemblance in point of fact, the following language from the case just cited is quoted: "Section 46, chapter 78, Compiled Statutes, being a portion of the road law of 1879 (Session Laws, 1879, p. 120), provides as follows: 'The section lines are hereby declared to be public roads in each county in this state, and the county board of such county may, whenever the public good requires it, open such roads without any preliminary survey and cause them to be worked in the same manner as other public roads.' * * * In 1867 there was passed an act (Session Laws, 1867, p. 45) providing, among other things, that all roads located in compliance with the laws of this state are declared open roads. * * * The act of 1873 provided that 'section lines be, and are hereby de-

38

clared to be, public roads and highways' in certain counties named. * * By an act of 1875 (Session Laws, 1875, p. 114, sec. 1) 'all roads, or parts of roads, located and established in this state, except such as are located on section lines, that shall not be worked or traveled for a period of six years from the location [of] said road or roads, the same shall be, and are hereby, declared vacated.' In 1879 there was passed (Session Laws, 1879, p. 120) 'An act to amend chapter 47 of the Revised Statutes of 1866, entitled "Roads."' This is our present road law and contains section 46 above quoted. The argument on behalf of the defendant is that this act did not operate to repeal the acts of 1873 and 1875, and did not vacate any roads established under the act of 1873, notwithstanding section 3 of this act, which provides that 'all roads within the state which have been laid out in pursuance of any law of this state or of the territory of Nebraska, and which have not been vacated in pursuance of the law, are hereby declared to be public roads; provided, that all roads that have not been used within five years shall be deemed vacated.' The evidence is undisputed that this road was not used prior to 1884. * * * We think this earlier legislation (of 1867, 1873), whatever may have been its effect, was superseded by the act of 1879. It is true that the act of 1879 was, in form and in title, an act to amend chapter 47 of the Revised Statutes of 1866, and did not contain or repeal the acts of 1867 or of 1873. Nor did it in terms repeal the act of 1875, which vacated all roads except section line roads for non-user. But chapter 47 of the Revised Statutes of 1866 was a general statute, covering the whole subject of roads and embracing all the legislation then existing. Under the title of an act to amend that chapter it was, therefore, competent for the legislature to include any subject germane to the provisions of the act amended; that is, relating to the general subject of location, opening, maintenance, and vacation of highways within the state. The act of 1879 repeated in the same terms a large portion of chapter 47,

Revised Statutes; and it formed a complete law by itself on the subject of highways." From this line of reasoning it is clear that it was within the constitutional power of the legislature to amend chapter 13 of the Revised Statutes of 1866, entitled "Courts," by substitution therefor of an act on the same subject, complete within itself, and that, therefore, the said act of 1879 was valid.

The only questions remaining to be determined are whether or not the incorporation into the substituted statute of a provision for stenographic reporters, and for the compensation to be allowed such reporters, was germane to the subject-matter of such legislation. In *Martin v. Tyler*, 60 N. W. Rep., 392, the supreme court of North Dakota had under consideration an act entitled "An act to provide for establishing, constructing, and maintaining drains in this state." It was contended that the provisions of this act violated that part of the constitution of that state which provided that "No bill shall embrace more than one subject, which shall be expressed in its title." The provisions of the statute called in question were for the creation of a special drainage commission, and vesting it with powers to act; the levying of special assessments to pay the costs of constructing drains; the providing for the issuance of bonds and of a sinking fund to pay the same, and the repealing of certain sections of existing statutes. In respect to the objections noted that court said: "The title to the act in question is very broad; 'An act to provide for the establishing, constructing, and maintaining drains in this state.' It covers the entire subject. Whatever means and instrumentalities are necessary or usual and proper for effectuating the purposes of the act may be provided in the act. The objections go only to the means and instrumentalities. * * * It (the question here) is not what power passes by implication, but what power may be expressly granted under a title authorizing internal improvements. We think authority to pay for such improvements in some manner other than the ordinary taxation, particularly when, as

in this case, the limit of ordinary taxation might be totally inadequate to meet the expense, is entirely germane to the title, and the issuance of bonds is, perhaps, the most common means known to the law for meeting such expenses." It might be that this court would not care to extend the principle under consideration as far as above indicated, but this is not necessary for our present purpose, which is simply to illustrate the rule of construction applicable to the facts of the case at bar. In *Simon v. Northup*, 40 Pac. Rep., 560, the supreme court of Oregon was considering an act of which the subject, or general object, as expressed in the title, was the acquisition, control, and management of certain specified bridges and ferries across the Willamette river at Portland, and the details by which these purposes were to be accomplished. Section 20, article 4, of the constitution of Oregon declares: "Every act shall embrace but one subject, and matters properly connected therewith, which subject shall be expressed in the title." In the consideration of the objects above indicated it was said: "But it is clearly stated in the title that one of the purposes of the act is to require the county court of Multnomah county 'to assume the management, control, and supervision of such bridges and ferries,' and this is certainly broad enough to sustain a provision requiring the county to provide the funds with which to pay the expenses of such management, control, and supervision, and such provision is germane to, and properly connected with, the subject expressed in the title, and valid." In *Town of Abingdon v. Cabeen*, 106 Ill., 200, it was held that the powers conferred upon townships by the act to subscribe for the capital of, or make donations to, a railroad company; to provide for election; to decide whether such subscriptions or donations should be made; for taxation for the payment of the same if voted, and for the issue of bonds, were sufficiently indicated by the title, which was "An act to incorporate the Dickson & Quincy R. R. Company," to comply with the constitutional provision that "No pri-

vate or local law which may be passed by the general assembly shall include more than one subject, and that shall be embraced in the title." In the delivery of the opinion of the court by Justice Dickey he said: "The title adopted being sufficient to apprise the legislators, fairly, of the general subject-matter of the act, all provisions therein fairly related to that general subject, and designed to conduce to the building of the road named, must, in the light of previous decisions of this court, be held to be fairly embraced in the title adopted." There were cited and analyzed several cases previously decided by the supreme court of Illinois upon substantially the same state of facts as that above considered, and the result in each instance supported the conclusion announced by Justice Dickey. The case just cited was followed by the same court in *Hutchinson v. Self*, 39 N. E. Rep. [Ill.], 27. The first paragraph of the syllabus of *Commonwealth v. Lloyd*, 35 Atl. Rep., 816, which correctly reflects the holding of the supreme court of Pennsylvania, is in this language: "Act March 16, 1872, entitled 'An act relating to the county commissioners of Cambria county,' provides (section 1) that the commissioners shall assemble at a certain date in each year for the purpose of organization, and that at said meeting each member shall produce his certificate of election. Section 2 fixes the salary of each commissioner at $400 per annum. Section 3 empowers said commissioners to employ a competent clerk, whose compensation shall not exceed $600 per annum. *Held*, That said act does not violate the constitutional provision that no bill shall be passed containing more than one subject, which shall be clearly expressed in its title." The supreme court in express terms approved the opinion which had been filed by the superior court, from which the case had come for review. In this opinion we find this language: "The second section gives the commissioners, each, compensation as ·a right to which they are entitled for services rendered the county in the discharge of their duties, and their compensation

is fixed at $400 per annum. We have said that the title clearly indicates any provision in the body of the act touching the rights, duties, and powers of the commissioners; and there is no right more thoroughly understood by all the people, as inevitably incident to an office, than the right to receive fair compensation for the performance of the duties thereof. By the third section the commissioners are empowered to employ a clerk for their assistance, and to pay him a salary, within certain limits, for his services. From the very nature of the duties to be performed by the county commissioners, a clerk to keep a correct record of their proceedings and the books pertaining to the office is a necessary incident thereto, and from the first organization of counties in this commonwealth to the present time persons peculiarly qualified have been employed and paid as commissioners' clerks; and it requires no stretch of the imagination on the part of any citizen or taxpayer to understand and take notice that the title of an act relative to county commissioners might and would include the right of such commissioners to employ and fix the salary of a clerk. We repeat that the title of this act is all-sufficient to give notice of any legislation properly pertaining to the rights, duties, and powers of the county commissioners of Cambria county, and there is nothing in the body of the act that does not pertain to such rights, duties, and powers; and instead of being misleading, the title is germane to every subject mentioned in the body of the act, and the entire act pertains to but one subject."

It is hardly requisite that we should enter into a detailed analysis of the above cases to illustrate what from them appears clear to us, and that is that the title, "An act to amend chapter 13 of the Revised Statutes of 1866, entitled 'Courts' (Session Laws, 1879, p. 82), was broad enough to admit of provision being made in the act for a stenographic reporter for each district court, and to provide for his compensation. The act just referred to, as we have already stated, was an act complete in itself

upon the subject of courts, and the provision for the appointment of a stenographic reporter was just as germane as was the requirement that there should be elected a clerk or appointed a bailiff, and, as shown by the above cases, it was proper that the compensation of such reporter should be fixed by the provisions of the act providing for his appointment. It has already been noted that the effect of the enactment of the general statute in question, in 1879, was to repeal the special provisions of the act of 1877, entitled "An act to provide stenographic reporters for the district courts, and to repeal an act entitled 'An act to provide for short-hand reporters in the district courts,' approved February 9, 1875." In the case of *Morgan v. State*, 48 Neb., 798, the opinion was prepared upon the line of argument pursued by the attorney general, in the absence of an argument in reply thereto. Now, for the first time, there are presented the considerations which we have just discussed, leading us to the conclusions already indicated. The result reached in *Morgan v. State, supra*, was unavoidable on the line which was followed; and said case, holding that section 49 of an act to amend chapter 13, Revised Statutes of 1866, entitled "Courts," passed and approved February 27, 1879, is unconstitutional and void, is overruled. The writ will issue as prayed.

WRIT ALLOWED.