Albertson v. The State.

REVERSED AND REMANDED.

ISAAC ALBERTSON AND OTHERS, PLAINTIFFS IN ERROR, V. THE STATE OF NEBRASKA, DEFENDANT IN ERROR.

1. **Action against County Treasurer:** EVIDENCE. In an action against a county treasurer for moneys collected by him for the state, the original receipts received by him from the state treasurer, and used by him in his settlement with the county commissioners, *prima facie* control as to the amount paid by him to the state.

2. **Action on Official Bonds.** Section 32 of the code of civil procedure authorizes an action upon an official bond in favor of the *public*, where there are no special provisions to the contrary, in the name of the obligee of the bond. Section 643 authorizes an action in favor of an *individual* who has sustained injury by a breach of its conditions in his own name.

3. **Action against County Treasurer:** PARTIES. A suit in behalf of the public against a county treasurer for a breach of the conditions of his bond must be instituted by the county clerk at the direction of the state auditor or county commissioners, and the petition should allege that it is so instituted.

4. **Construction of Statutes.** Special provisions of a statute in regard to a particular subject will prevail over general provisions in the same or other statutes, so far as there is a conflict.

5. ———. Where there is an irreconcilable conflict between different sections or parts of the same statute the last words stand, and those in conflict therewith are repealed.

ERROR to the district court for Colfax county. Tried before Post, J. The case is stated in the opinion.

*C. J. Phelps* and *Marlow & Munger*, for plaintiff in error, cited *Board of Education v. Kersinger*, 2 W. L. M. *Hunter v. Commissioners*, 10 Ohio State, 515. *Commissioners v. Craft*, 6 Kan., 145. Sec. 95 Gen. Stat., 930. *Snyder v. The State*, 21 Ind., 77. *Taggart v. The State*, 49 Ind., 42. *Cabel v. McCafferty*, 53 Ind., 75.

*C. J. Dilworth*, Attorney General, for the State.

MAXWELL, CH. J.

Isaac Albertson was treasurer of Colfax county from the fourth day of December, 1871, to the fifth day of January, 1874. On the seventeenth day of March, 1876, the state of Nebraska commenced an action against Albertson and his sureties on his official bond, in the district court of Colfax county, to recover the sum of $2,210, claimed to be due the state, the items being as follows: $824.43 state taxes, $60 judiciary fund, $455.09 interest on school land, $870.50 principal of school land.

On the trial of the cause the plaintiff recovered the entire sum claimed. Albertson and his sureties bring the cause into this court by petition in error.

The plaintiffs in error called as a witness one Woods who had been employed as an expert by the county commissioners of Colfax county to examine Albertson's accounts, who testified that from the examination made by him it appeared that Albertson had overpaid the general fund $926.07, state sinking fund $185.45¾, university and state normal school fund $485.47¾. That there was a balance due the state on the state school fund of $231.21¾. The witness testifies that he made his statements from the receipts of the state treasurer to Mr. Albertson; that he, with one Bleker, had been employed by the county commissioners of Colfax county, soon after the expiration of Mr. Albertson's term of office, to examine his accounts, and had spent about four weeks in making the examination. The original receipts could not be found at the time of the trial, but the witness swears that the aggregate amounts were taken from such receipts at the time of the examination three years before. No attempt was made on the part of the state to impeach this testimony by showing from the proper records of the county that it is incorrect. This should have been done.

Section 42, chapter 13, Gen. Statutes, 239, provides that "the county clerk shall keep a distinct account with the treasurer of the county for each several term for which the treasurer may be elected, in a book to be provided for that purpose, commencing from the day on which the treasurer shall assume the duties of his office, and continuing until the same or another person is qualified as treasurer, in which account he shall charge the treasurer with all sums paid him, and for all sums for which the treasurer is accountable to the county, and he shall credit him with all orders re-

turned and cancelled, with all moneys paid, and with all vouchers presented to him, and with all matters with which the treasurer is credited on account.

Section 47, chapter 66, Gen. Stat., 916, provides that "the county clerk is required to keep a duplicate of the treasurer's cash book, and to enter therein all duplicate receipts by him received from the treasurer, in the same manner and form as the treasurer is required to keep the same."

Section 77, page 925, provides that "the county treasurer shall settle with the county commissioners on or before the first Monday of May, and on the first Monday of October; *provided, however*, that the county commissioners may require the county treasurer to settle with them at any time. The treasurer is to be charged with the amount of all tax lists placed in his hands for collection, and credited with the amounts collected thereon, and the delinquent lists; he shall leave his vouchers with the commissioners to be retained by them for evidence of his settlement. If the treasurer's accounts are correct, the commissioners shall certify the same; if not, he shall be liable on his bond."

It will thus be seen that the account with the county treasurer is kept in the county, and the settlement is to be made *with the county commissioners*. The state taxes are to be collected and paid to the state treasurer, and the receipt received therefor is to be used as a voucher in his settlement with the commissioners. This receipt given by the state treasurer is the original; a duplicate thereof, it is shown by the testimony, is filed in the auditor's office and a copy retained in the treasurer's office. While the auditor is the general accountant of the state, and is required [Gen. Stat., 1011] to keep all "public account books, accounts, vouchers, documents, and all papers relating to the accounts and contracts of

the state, and its revenue, debt, and fiscal affairs, not required by law to be placed in some other office, or kept by some other officer or person," yet in a contest as to the amount paid to the state treasurer by a county treasurer, the original receipt of the state treasurer filed with the county commissioners *prima facie* will control.

It appears from the record that one F. E. Frye acted as deputy for Albertson, and had acted as deputy for his predecessor. That Albertson, in fact, had trusted the business to his care. It also appears that on the fourth day of December, 1871, Albertson received from his predecessor the sum of $10,421 belonging to the several funds, but we are not informed whether this included the sum of about $2,000 afterwards paid by Frye to the state treasurer on the account of Carson, the predecessor of Albertson. And the testimony entirely fails to show what sum, if any, Albertson turned over to his successor in office. Under the issue made in the pleadings the burden of proof was on the state, and there not being sufficient proof to sustain the judgment it must be reversed.

The plaintiffs insist that the action cannot be prosecuted in the name of the state. Section 5, chapter 6, Gen. Stat., 99, provides that: " All bonds by county and precinct officers shall be given to the county in which such officers are elected respectively, * * and shall be approved by the county commissioners and filed in the office of the county clerk, unless otherwise provided by law." The bonds in this case are given to the " County of Colfax."

Section 30 of the code, Gen. Stat., 528, provides that: "Every action must be prosecuted in the name of the real party in interest, except as provided in section thirty-two."

Section 32 provides that: " An executor, adminis-
30

trator, guardian, trustee of an express trust, a person with whom or in whose name a contract is made for the benefit of another, or a person expressly authorized by statute, may bring an action without joining with him the person for whose benefit it is to be prosecuted. Officers may sue and be sued in such name as is authorized by law, and *official bonds may be sued upon in the same way.*"

Section 643, page 639, Gen. Stat., provides that: "When an officer, executor, or administrator within this state, by misconduct or neglect of duty, forfeits his bond or renders his securities liable, any *person* injured thereby, or who is by law entitled to the benefit of the security, may bring an action thereon in his own name against the officer, executor, or administrator, and his sureties, to recover the amount to which he may be entitled by reason of the delinquency."

Evidently two classes of cases are covered by these provisions, the one where the security is taken to protect the rights of the public, and the other where it is taken to protect the rights of individuals, as in the case of *Stewart v. Carter*, 4 Neb., 564. *Hoffman v. Kopplekom*, 8 Id., 344. In this class of cases the action may be brought in the name of the individual, because the public have no interest in the matter in controversy, and a judgment in favor of one person is no bar to another action thereon by some other person injured by a breach of the conditions of the bond. This section seems to be limited to cases of private injury and to have no application where the injury is to the public. Where the injury is to the public the action must be prosecuted as provided in section thirty-two.

This question was before the supreme court of Ohio in *Hunter v. Commissioners of Mercer County*, 10 Ohio State, 616. In that case the bond was given as required by statute to the state of Ohio, conditioned for

the faithful discharge of the official duties of William Hunter as treasurer of Mercer county, etc.   An action was brought on the bond in the name of the county commissioners.   It was held that the commissioners derived no authority under section 566 (643 of our code) to maintain an action on the bond, and that the action must be brought in the name of the obligee.   And the same ruling was had in the case of *Athens Township v. Kersinger*, 2 W. L. M., 474.

Section 95, chapter 66, General Statutes, 930, provides that "if any county treasurer shall fail to make return, fail to make settlement, or fail to pay over all money with which he may stand charged, at the time and in the manner prescribed by law, it shall be the duty of the county clerk, on receiving instructions for that purpose from the state auditor, or from the county commissioners of his county, to cause suit to be instituted against such treasurer and his sureties, or any of them, in the district court of his county."   This section corresponds with section 101 of chapter 46 of the Revised Statutes of 1866, and is a special provision as to the mode of procedure, in case of the delinquency of the treasurer.   The object of requiring the county clerk to institute proceedings is not entirely clear, but probably because he is the accountant of the county, and knows, or is presumed to know, the condition of the treasurer's account, and whether in fact he is in default.   And such a rule is founded on just and equitable principles.   The auditor of state being the general accountant of the state, reports to the clerk of a particular county that he finds from his accounts that the treasurer of that county has failed to pay over certain funds due the state, and directs him to institute a suit against the treasurer.   The clerk would then ascertain from his own records whether the treasurer had in fact paid such money over or not, as in the event of a suit he

would be required to verify the petition, and he could not swear that he believed the treasurer to be in default unless his records disclosed that fact. Thus the rights of the public are protected, while the rights of the treasurer are also, as no action can be commenced unless there is probable ground. But whatever the object of the statute, its plain provisions cannot be disregarded, and must be obeyed. In an action against a county treasurer like the one at bar, the petition must allege, and if necessary the plaintiff must prove on the trial that the action was instituted by the county clerk at the direction of the state auditor or the county commissioners.

The plaintiffs in error insist that, the bond being given to the *county*, the action cannot be prosecuted in the name of the *state*. As already shown, section 32 of the code provides that " officers may sue and be sued in such name as is authorized by law, and official bonds may be sued upon in the same way."

At common law an action could only be brought on a bond in the name of the obligee. Has the code changed this rule?

In *Hunter v. Commissioners*, 10 Ohio State, 519, it was held that the code had not changed the common law rule in that regard. The bond is a contract made with the county for the use of whoever is intrusted with the funds in the treasurer's hands. The obligee thus becomes the trustee of an express trust. Suppose a county treasurer has in his hands funds belonging to the state, county, and the several school districts in his county? Must each school district, the county, and the state bring a separate action for their several funds, when one suit in the name of the obligee of the bond will place the money when recovered in the hands of the proper authorities, to be paid to those entitled to the same? We think it is clear that an action against

a county treasurer upon his official bond, for the recovery of *public* moneys, must be prosecuted in the name of the obligee of the bond.   The attorney general in his brief admits that section 644–643 of the code does not apply to this class of cases, but contends that it is governed by section 4, article 3, of chapter 73, General Statutes, p. 1013, which provides that " It shall be the duty of the auditor  *  *  to direct prosecutions in the name of the state for all  official  delinquencies, in relation to the assessment, collection, and payment of the revenue, against all persons who by any means become possessed of public money or property, due or belonging to the state, and fail to pay or  deliver the same, and against all debtors of the state."   If this provision stood alone, it would probably be sufficient to authorize a suit to be instituted in the name of the state. On page 21 of the Revised Statutes of 1866, we find the above provision, with the additional authority to the auditor to employ an attorney in certain cases.  On pages 338 and 339, we find section 101 of the revenue law which reads as follows:  " If any county treasurer shall fail to make return, fail to make settlement, or fail to pay over all money with which he may stand charged, at the time and in the manner prescribed by law, it shall be the duty of the county clerk, on receiving instruction for that purpose from the territorial auditor or from the county commissioners of his county, to cause suit to be instituted against such treasurer and his sureties, or any of them, in the district court of his county.

It is a well settled rule of construction that special provisions of a statute in regard to a particular subject will prevail over general provisions in the same or other statutes so far as there is a conflict.   *The People v. Gosper*, 3 Neb., 310.   *McCann v. McLennan*, 2 Id., 289.   *Pelt v. Pelt*, 19 Wis., 193.   *City of Covington v.*

*McNickles*, 18 B. Monroe, 286. *Peyton v. Mosely*, 3 Mon., 77. Such being the case the special provisions contained in section 95 of the revenue law govern in the case, and the general provisions of section 4, chapter 73, do not apply. Again, the Revised Statutes of 1866 were passed as one act, and in such case the well known rule applies that where there is an irreconcilable conflict between different sections or parts of the same statute, the last words stand, and those which are in conflict therewith are, so far as there is a conflict, repealed. The judgment of the district court is reversed, and the cause remanded for further proceedings.

JUDGMENT REVERSED.

LAKE, J.

I concur in so much of the foregoing opinion as holds that the action in the name of the state cannot be maintained. It should unquestionably have been brought in the name of the county, although instituted by the direction of the state auditor, under the statute.

But as to the residue of the opinion of the majority of the court I must dissent, and, briefly stated, for the following reasons: 1. Under the pleadings, in my opinion, the burden of proof was not on the state, but on the defendants. 2. But whether the burden of proof were put upon the defendants or not there was ample testimony to support the verdict. As to the burden of proof, an examination of the pleadings will show this to be their condition, viz.: the petition sets forth in detail an itemized account of all the taxes received by the defendant Albertson, as treasurer, belonging to the various state funds, followed by an explicit statement of the full amount paid over by him to the state treas-

urer, as shown by the several vouchers returned by him to the county clerk, as the statute directs, for record. In this statement of taxes collected, the several dates when, and the names of the various persons from whom, they were received, are particularly given. This statement of the account between Albertson and the state shows the exact balance in his hands for which the action was brought.

In the answer there is no denial of the correctness of any item of this long account, and it must be taken as true—or at least should be, under the rule of the civil code—that material allegations of the petition, not controverted by the answer, " shall, for the purpose of the answer, be taken as true." The defendants contented themselves by alleging in the most general way payment by Albertson to the state treasurer of all funds which he had received belonging to the state. This, in addition to being a mere conclusion of fact, with nothing whatever alleged to support it, was denied by the reply, which, according to my understanding of the rules of pleading, threw the burden of proving such payment upon the defendants, and if they failed to make good the averment the plaintiff must recover.

As to the evidence, all I care to say is, that upon all material matters there was but little real conflict, and in my opinion fully warranted the verdict returned by the jury, independently of the effect which I would give to the averment of the petition. With the petition admitted, there is not the shadow of doubt, in my mind, that the verdict was right, and should be upheld.