STATE, EX REL. AARON F. POWERS, V. LOU. B. PART-
RIDGE.

[FILED MARCH 19, 1890.]

Statutes: AMENDMENT: CONSTITUTIONALITY: COUNTY BONDS.
The act of the legislature, approved February 26, 1889, amending
the second division of section 25 of chapter 18 of the Compiled
Statutes of 1887, relating to county buildings and offices, as
amended by the act of March 31, 1887, having been considered
in the cases of *State, ex rel., etc., v. Babcock*, 23 Neb., 128, *Fenton
v. Yule*, 27 Id., 758, *Baird v. Todd*, and *Jameson v. Dickson*, Id.,
782, and held valid and in force from its passage and not ob-
noxious to sections 11 and 15 of article 3 of the constitution of
this state, *held*, that the seventy-five bonds of the denomination
of $1,000 each, issued by the county of Adams and dated July
1, 1889, for the purpose of erecting a court house and jail, are
issued in accordance with law and are valid, and that it is the
duty of the county clerk to levy the tax for the payment of the
annual interest and a sinking fund for the final redemption of
the principal according to the tenor of the bonds, and for this
purpose the relator will take his writ.

ORIGINAL application for *mandamus*.

*O. P. Mason*, and *John A. Casto*, for relator, cited; *B.
& M. R. Co. v. Saunders County*, 9 Neb., 511.

*W. A. Dilworth*, contra.

COBB, CH. J.

The relator makes this application for a writ of *manda-
mus* against the county clerk of Adams county to compel the
levy of taxes and provide for the redemption of county
bonds, for court house purposes in Hastings, under author-
ity of an act approved February 26, 1889, entitled "An
act to amend the second division of section 25, chapter 18,
of the Compiled Statutes of 1887, in relation to county

buildings and offices, and to repeal said second division."
The relator states that he is a resident taxpayer of Adams
county and chairman of the board of supervisors of the
county, which is organized under the township system of
administration into seventeen townships, and was managed,
during the year 1889, by a board of supervisors of twenty-
three members, duly elected and qualified under the town-
ship organization law; that on March 13, 1889, nine
members of said board, being more than one-third, peti-
tioned the county clerk to call a meeting of the board at
Hastings on the 22d of March following, for the purpose
of submitting to the electors of the county a proposition to
vote the issue of county bonds for the erection of a court
house and jail, and for other purposes, which meeting was
duly called by the clerk and was duly held by the board
in Hastings on the 22d and 23d of March following, by
which a special election was called to be held April 30
following, and was so held at the voting places through-
out the county at which general elections were by law to
be held, and at which the proposition submitted by said
board of supervisors was voted upon, to issue county bonds
to the amount of $75,000 for the erection of a court house
and county jail at Hastings, and to levy annually on all
the taxable property of the county a tax to pay the inter-
est and five per centum of the principal, and also at the
levy next preceding the maturity of the bonds to levy an
additional tax sufficient to pay the principal and interest
due, and received 1,416 votes for the proposition and
1,044 votes against it. Subsequently, on May 7, follow-
ing, the board of supervisors canvassed the election returns
and votes cast upon said proposition and declared the same
adopted by a majority of 372 of the legal voters voting
thereon. That in pursuance of such adoption the board
let, by publication and advertisement, to the builder a
contract for the erection of a court house and jail in Hast-
ings at a cost of less than $75,000, which court house and

jail are now being built; that in pursuance of such contract for the erection of said buildings, on June 15, following, the board caused to be issued and registered seventy-five county bonds of the denomination of $1,000. each, dated July 1, 1889, payable July 1, 1909, at five per cent interest, payable on July 1 in each year, with the county option of redemption at any time after ten years from July 1, 1889, in accordance with the proposition submitted, voted upon, and adopted; that on July 9, 1889, said bonds were registered in the office of the auditor of state, but the county clerk refused, and still refuses, to make such levy as required to pay the interest and create a sinking fund for their redemption under section 14, chapter 9, of Compiled Statutes of 1887; that on September 11, 1889, written demand was made of said county clerk to make such levy and to place the same on the assessor's tax roll, which he refused to do.

The relator represents that the work on the court house and jail under said contract has been prosecuted since June 12, 1889, and the foundations completed, and that unless the county clerk is compelled to make the levy and place the same on the tax roll to enable the county to sell the bonds and comply with its contract for the erection of said buildings, the county will suffer damage, will be sued on its contract, will have an unfinished and useless work, and be compelled to transact its public affairs without a suitable court house and jail, which will cause loss and damage to the county, and to all citizens and taxpayers, and to the relator.

The answer of Lou. B. Partridge, county clerk of Adams county, admits that the matters set forth are true; that he refused to extend the tax list of the county to pay the interest on the bonds and create a sinking fund for their redemption, for the reason that the law under which they were issued, chap. 10 of Session Laws of 1889, is unconstitutional and void:

1. Because the body of the act is not embraced in the title.

2. Because the title is not germane to the body of the act.

3. Because the act does not repeal sec. 30, chap. 18, of the Comp. Stats., 1887.

4. Because at the time that chap. 28 of the Session Laws of 1887, approved March 31, 1887, was passed, and is supposed to be a part of sec. 25 of Comp. Stats., 1887, there was no section 25 to be amended thereby, as the same had been repealed by chap. 27 of the Session Laws of 1887, approved March 29, 1887, and therefore the supposed chap. 10 of the supposed laws of 1889 had no foundation or law to amend.

5. Because said chapter 10 is not a complete act of itself.

6. Because it is in violation of sections 7 and 11, article 3, and section 5, article 9, of the constitution of this state.

The relator presents with this information proof that all of the necessary antecedent steps, informing the people of the county of the nature of the proposition to be submitted, appointing and holding an election for its adoption or rejection, and for canvassing the returns and declaring the result, were legally taken, by which it was ascertained and declared that the proposition to issue bonds of $75,000, for county buildings, under the act of February 26, 1889, was adopted by a majority of 372 of the legal voters voting thereon.

These facts are not disputed by the respondent. No objection is offered against the propriety of the object of these proceedings. He refuses to extend the tax list of the county and give value to the bonds solely for the reason that the law under which they were issued is unconstitutional and void. The validity of the act of February 26, 1889, and the legality of county bonds issued under it, have been extensively argued to the court, and carefully considered heretofore. All of the disputed questions in

this proceeding have been authoritatively settled in favor of chapter 10 of the General Laws of the twenty first session of the Nebraska legislature, an accurate and constitutional body. Under this chapter the proposition was made, the election held, the bonds voted and issued, and under it these proceedings are supported. It is therefore only deemed necessary to refer to the precedents which are to control this application..

On the 30th day of March, 1887, the law as then amended provided in sec. 25, ch. 18, Comp. Stats., 1887, p. 290, that "it shall be the duty of the county board of each county:

"First—To cause to be annually levied and collected taxes authorized by law for county purposes, not exceeding one dollar and fifty cents on the one hundred dollars valuation, unless authorized by a vote of the people of the county, and in addition thereto sufficient to pay the interest and create a sinking fund for the payment of the principal of all indebtedness which existed at the adoption of the constitution, November 1, 1875.

Second—To erect or otherwise provide when necessary, and the finances of the county will justify it, and keep in repair, a suitable court house, jail, and other necessary county buildings, and to provide suitable rooms and offices for the accommodation of the several courts of record, the county board, clerk, treasurer, sheriff, clerk of the district court, county superintendent, and county attorney, and to provide suitable furniture therefor. But no appropriation exceeding fifteen hundred dollars shall be made for the erection of any county building without first submitting the proposition to a vote of the people of the county at a general election, and the same is ordered by two-thirds of the legal voters voting thereon."

On the 31st of March, following, an act was introduced and passed amendatory of the second division of this section (chap. 28, Acts of 1887), entitled "An act to amend

the second division of sections 25 and 26, chapter 18, of the Compiled Statutes of 1885, so that county boards shall have power to borrow money and issue bonds for the payment thereof, to erect or otherwise provide the necessary county buildings."

"Section 1.    Division second of section 25, chapter 18, Compiled Statutes of 1885, is hereby amended so as to read as follows: 'To erect or otherwise provide a suitable court house, jail, and other necessary county buildings, and for that purpose to borrow money and issue the bonds of the county to pay the same; to keep the said buildings in repair, and to provide suitable rooms and offices for the accommodation of the several courts of record, the county board, clerk, treasurer, sheriff, clerk of the district court, and county superintendent, and county attorney, provided said county attorney shall hold his office at the county seat, and suitable furniture therefor.    But no appropriation exceeding fifteen hundred dollars shall be made for the erection of any county building without first submitting the proposition to a vote of the people of the county at a general election, or a special election ordered by said board for that purpose, and the same is ordered by three-fifths of the legal voters voting thereon.'"

This amendment added to the law "a special election ordered by the board for that purpose," at which the present proposition was voted for, and changed the rule of election and adoption from two-thirds to three-fifths of the legal voters voting thereon.

It was objected to this amendment, formerly, that it was published in the volume of 1887, as a foot-note only, and not in the text of the compilation as the second division of section 25.    To this it is answered that in the application of *State, ex rel., Burnham v. Auditor of Public Accounts*, for a peremptory *mandamus* to register and certify certain court house bonds voted and issued in Logan county, considered in this court and reported 23 Neb., 128, it was held that this

amendment related to section 25, as amended on March 30, 1887. And in the later case of *Fenton v. Yule*, 27 Neb., 768, decided at the last term of this court, it was also held, as to this amendment, that it was an act passed, enrolled, approved, and deposited with the secretary of state as an act in force, and competent of amendment, though by error, inadvertency, or misconception it may not have been compiled and published in the same manner with the text of other laws of the state, and that the work alone of the editor and compiler of General Statutes will not invalidate an act of the legislature. This provision, then, became the second division of section 25 of chapter 18 of the Compiled Statutes of 1887 from the date of its passage.

On February 26, 1889, was passed chapter 10, amending said second division, providing that the proposition submitted to a vote of the people of the county at a general election, or a special election ordered by said board for that purpose, shall be adopted if "the same is ordered by a majority of the legal voters voting thereon;" thereby changing the rule of election and adoption from three-fifths to that of a majority of the legal voters voting on the proposition. This act had no other purpose or effect. Its constitutionality was considered, in the case mentioned as decided at the last term of the court, on the issue of the court house bonds of Gage county, and it was there held that the act was valid and in force from its passage, and is not obnoxious to sections 11 and 15 of article 3 of the constitution of this state. In the cases of *Baird v. Todd*, and of *Jameson v. Dickson*, 27 Neb., 782, at the same term, the same questions were again considered and the former decisions cited and affirmed.

It therefore appearing that the seventy-five $1,000 county bonds for the erection of the court house and jail at Hastings, in Adams county, are issued in accordance with law, it is ordered that the relator take his writ

against the respondent to enforce all necessary provisions of law.

WRIT ALLOWED.

THE other judges concur.