STATE OF NEBRASKA, EX REL. CITY WATER COMPANY, V. CITY OF KEARNEY ET AL.*

FILED OCTOBER 7, 1896.   No. 8728.

1. **Statutes:** AMENDMENTS. It is the settled law of this state that where it is sought to amend a legislative enactment the amended law must be set out in the new act and, in addition, contain a provision for the repeal of the old law so amended.

2. ———: SUBDIVISIONS: AMENDMENTS. The amendment of a subdivision of a section of a designated statute is not unconstitutional merely because the amendatory act does not contain the entire section as amended. It is a sufficient compliance with the requirements of the constitution if the new act contains the subdivision as amended and a repealing clause.

3. ———: ———: ———. The legislative enactment approved March 2, 1885, entitled "An act to amend subdivision 1 of section 69 of chapter 14 of the Compiled Statutes" (Session Laws, 1885, p. 161, ch. 19), does not conflict with section 11, article 3, of the constitution, providing that "no law shall be amended unless the new act contains the section or sections so amended," etc.

4. ———: TIME OF GOING INTO EFFECT. Under the constitution of this state, a statute which contains no emergency clause does not become operative until three calendar months after the adjournment of the session of the legislature at which it is passed.

5. ———: AMENDMENTS: CONSTITUTIONAL LAW. Though there be apparent confusion in the application of an act to an existing statute sought to be amended thereby, the amendatory act will not be declared unconstitutional where the intention of the legislature is not doubtful and the amendment is consistent with the title and subject-matter of the original law.

6. ———: ———: ———: CITIES AND VILLAGES. Held, That the act approved March 10, 1885, to amend section 69 of an act entitled

*For opinion on rehearing see *post*, p. 337.

" 'An act to provide for the organization, government, and powers of cities and villages,' approved March 1, 1879" (Session Laws, 1885, p. 162, ch. 20), does not conflict with section 11, article 3, of the constitution, though an act was passed with an emergency clause on March 2, 1885, amending a subdivision of said section 69.

7. ———: Construction. Specific provisions of a statute relating to a particular subject will prevail over general provisions in the same enactment.

8. Taxation: Water Companies: Cities. Under subdivision 15, section 69, chapter 14, Compiled Statutes, 1885, a tax not exceeding five mills on the dollar of the assessed valuation could be levied by a city of the second class or village "to pay for water furnished such city or village under contract."

9. Constitutional Law: Contracts. The legislature is powerless to pass a law impairing the obligation of contracts.

Original application for *mandamus* to compel the mayor and council of the city of Kearney to make an appropriation and levy a tax to pay for water furnished by relator to the city. *Writ allowed.*

*Marston & Marston,* for relator.

*William Gaslin, contra.*

Norval, J.

This is an original application for a peremptory writ of *mandamus* to require the mayor and council of the city of Kearney to make an appropriation and levy a tax sufficient to pay for water furnished by the relator to the city. There is no controversy over the facts, which, so far as may be necessary to an understanding of the questions involved, may be summarized as follows: On the 18th day of August, 1886, the city of Kearney, by ordinance duly passed, published, and approved, granted to the American Water-Works & Guarantee Company the privilege of constructing and operating in the city, for the term of twenty-five years, a system of water-works, and also contracted with said company for the rent of fire hydrants during said period and for supplying water to the city. By the terms of the ordinance and contract

the company was to put in for the use of the city forty-
five fire hydrants, and it agreed to pay as rent therefor
at the rate of $66 2-3 each per annum for the said term
of twenty-five years, payable semi-annually, on the first
day of January and July in each year. It was further
provided that the city should have the right to require
said company, or its assigns, from time to time to make
extensions of the pipe system of said water-works and to
erect upon such extensions additional hydrants at the
rate of one to every 400 feet of such extension, the city
to pay rent for the use of such additional hydrants at the
rate of $40 per annum for the unexpired term of said
franchise. Subsequently, in September, 1886, the said
American Water-Works & Guarantee Company assigned
all its franchises, rights, privileges, and interests ob-
tained in, under, and by virtue of said contract and ordi-
nance to the relator, and the latter constructed said
water-works in accordance with, and pursuant to, said
ordinance and contract, and the same were accepted by
the city on the 3d day of March, 1887, and from thence
hitherto relator has furnished the supply of water as by
said ordinance and contract required. It also appears
that the pipe line of said system of water-works, in pur-
suance of said ordinance, has been extended from time
to time, and likewise the number of fire hydrants has
been increased to 106, in addition to the original forty-
five, through all of which relator has supplied water to
the city up to the present time in compliance with said
contract. The municipal authorities of the city of Kear-
ney have levied and collected taxes upon the taxable
property in said city sufficient to pay, and have paid, for
all water supplied the city prior to the year 1896. There
are no available funds in the treasury of the city to pay
for the water furnished and to be furnished during the
present municipal year, and the city council, being in
doubt as to its power or right in the premises, has failed
and refused to make any levy to raise funds with which
to pay the indebtedness. At the time the water-works

were erected a levy of five mills upon the assessed valuation of the taxable property of said city was ample to pay the hydrant rental, but owing to the increase in the number of hydrants as aforesaid, it will now require a levy of about nine mills on the dollar of the assessed valuation to raise a sufficient amount to pay for the water furnished the city by the relator during the ensuing year.

The question presented for consideration is as to the power of the city of Kearney to levy a tax for the purpose indicated, and the determination thereof necessitates an examination and consideration of the various legislative enactments bearing upon the subject.

The legislature in 1879 passed an act entitled "An act to provide for the organization, government, and powers of cities and villages." (Session Laws, 1879, p. 191; Compiled Statutes, 1881, ch. 14.) This act conferred no power or authority upon cities containing less than 15,-000 inhabitants to contract for water or to levy a tax to pay for the same. In 1881 various sections of said law were amended, among others sections 1 and 69. The amended section 1 declared all cities, towns, and villages containing more than 1,500 and less than 25,000 inhabitants to be cities of the second class and to be governed by said original law, unless a village government should be adopted. (Session Laws, 1881, p. 163.) Section 69 of said act of 1879 contained thirty-six consecutively numbered subdivisions, and the legislature of 1881, in amending said section, engrafted onto subdivision 15 thereof a provision empowering cities of the second class and villages "to make contracts with, and authorize, any person, company, or corporation to erect and maintain a system of water-works and water supply, and to give such contractors the exclusive privilege, for a term not exceeding twenty-five years, to lay down in the streets and alleys of said city water mains and supply pipes, and to furnish water to such city or village and to the residents thereof, under such regulations as to price, supply,

rent of water meters as the council or board of trustees may from time to time prescribe by ordinance for the protection of the city, village, or people." (Session Laws, 1881, p. 176.) While the foregoing provision gave to cities of the class of Kearney the power to grant a franchise to individuals or corporations to erect water-works and to contract for the furnishing to the municipality of water, neither it nor any other statute then in force contained any specific provision for the levying of a tax to pay for the water so furnished.

The next session of the legislature, held in 1883, passed an act entitled "An act to amend section 69, chapter 14, entitled 'Cities of the Second Class and Villages.'" (Session Laws, 1883, p. 117, ch. 15.) By this act it was sought to amend said section 69 and thereby remedy the defects or omission indicated above, but the act of 1883 is invalid, because it contained no provision for the repeal of the original section attempted to be amended, as required by section 11 of article 3 of the constitution. Under the decisions of this court, said act of 1883 was invalid, since it contained no repealing clause. (*Lancaster County v. Hoagland*, 8 Neb., 38; *Ryan v. State*, 5 Neb., 276; *City of South Omaha v. Taxpayers' League*, 42 Neb., 671.)

An attempt was made at the session of the legislature in 1885 to amend subdivision 1 of section 69 of the act of 1879 by passing the following:

"An act to amend subdivision 1 of section 69 of chapter 14 of the Compiled Statutes.

"*Be it enacted by the Legislature of the State of Nebraska:*

"Section 1. That subdivison 1 of section 69 of chapter 14 of the Compiled Statutes be amended to read as follows:

"Section 1. To levy taxes for general revenue purposes not to exceed ten mills on the dollar; to levy taxes not to exceed ten mills on the dollar for water-works, for fire protection, domestic purposes, and for sewerage; to levy taxes not to exceed three mills on the dollar for lighting

the streets, alleys, public grounds, and public buildings with gas, such levy to be made in any one year on all property within the limits of said cities and villages taxable according to the laws of the state of Nebraska, the valuation of such property to be ascertained from the books or assessment rolls of the assessors of the proper precinct or township; *Provided*, That no such taxes shall be levied for water-works, sewerage, or gas, or any contract shall be entered into by such city or village for a water supply, gas, or sewerage, unless the same shall have been submitted to the legal voters of such city or village at a regular or special election and carried by a majority of all the voters voting on such proposition at such election.

"Sec. 2. Subdivision 1 of said section 69, as now existing, is hereby repealed.

"Sec. 3. Whereas an emergency exists, therefore this act shall take effect and be in force from and after its passage.

"Approved March 2, A. D. 1885." (Session Laws, 1885, p. 161, ch. 19.)

It will be observed that the foregoing provides for the levying of a tax not exceeding ten mills for water supply and sewerage, in case the municipal authorities have been first empowered so to do by the requisite vote of the qualified electors. Therefore, if the said act of March 2, 1885, is constitutional and was in force at the time of entering into the contract in question by the city of Kearney, there is no room for doubt that a sufficient levy can be legally made to pay the rental of hydrants for the current year. The first inquiry is whether said legislation was enacted in the constitutional mode. It cannot escape notice that the title to the act only indicates a purpose to amend one of the thirty-six subdivisions of section 69, and the body of the statute is no more comprehensive in its scope than the title in that respect. While the act under consideration is amendatory of said

section 69, it does not contain the entire section thereby amended, but merely the subdivision charged. This does not contravene the provision of section 11 of article 3 of the constitution, which declares: "No law shall be amended unless the new act contains the section or sections so amended, and the section or sections so amended shall be repealed." In amending statutes it is necessary that all parts of the amended law should be set forth in the new act, and the old statute so amended repealed. The constitution requires that the section as amended shall be set out. This court has more than once held that the word "section," as employed in the constitutional provision above quoted, refers to a subdivision of a legislative enactment, and that a law to amend a certain subdivision of a section which contains the subdivision so amended is not inimical to said clause of the constitution. (*State v. Babcock,* 23 Neb., 128; *Fenton v. Yule,* 27 Neb., 758; *Baird v. Todd,* 27 Neb., 782; *State v. Partridge,* 29 Neb., 158; *State v. Bemis,* 45 Neb., 724.) Those cases are directly in point, and fully sustain the validity of the act of March 2, 1885.

It is argued by the city attorney that said law was not in force at the time the franchise was granted, but had been repealed by the legislature on March 10, 1885. On that day section 69 of the act of 1879 was amended, and the original section in express terms repealed. (Session Laws, 1885, p. 162; Compiled Statutes, 1885, ch. 14.) Subdivision 15 of said section 69, as amended on March 10, 1885, confers authority upon cities of the class to which Kearney belongs, and villages, *inter alia,* "to make contracts with and authorize any person, company, or corporation to erect and maintain a system of waterworks and water supply, and to give such contractors the exclusive privilege, for a term not exceeding twenty-five years, to lay down in the streets and alleys of said city water mains and supply pipes, and to furnish water to such city or village and the residents thereof, and under such regulations as to price, supply, rent of water meters

as the council or board of trustees may from time to time
prescribe by ordinance for the protection of the city, vil-
lage, or people.   *   *   *   And levy and collect a gen-
eral tax in the same manner as other municipal taxes
may be levied and collected for the purchase of steam
engines, and for the purchase, erection, or construction
and maintenance of such water-works, or to pay for
water furnished such city or village under contract, to an
amount not exceeding five mills on the dollar in any one
year, on all the property within such city or village as
shown and valued upon the assessment rolls of the as-
sessor of the proper precinct or township, in addition to
the sum authorized to be levied under subdivision one of
this section, and all taxes raised under this clause shall
be retained in a fund known as 'Water Fund.'" (Session
Laws, 1885, p. 167, ch. 20.)    Subdivision 1 of this section
provides for levying a tax not exceeding ten mills for
general revenue purposes alone, so that the only express
power given for imposing a tax to pay for a water supply
is to be found in the language above quoted, which
limits the rate authorized to be levied to five mills on the
dollar "to pay for water furnished such city or village."
This last act contained no emergency clause, hence it did
not take effect until three calendar months after the ad-
journment of the session of the legislature for that year,
so that the act of March 2 was in force and not super-
seded until that period. (Constitution, art. 3, sec. 24;
*Roesink v. Barnett*, 8 Neb., 148; *McGinn v. State*, 46 Neb.,
427.)

But it is insisted by counsel for relator that said act
of March 10 is invalid because it indicated a purpose to
amend "section 69 of the act of 1879," which did not then
exist, and for the further reason the repealing clause at-
tempted to repeal a section not then in force.    The title
is, "An act to amend section sixty-nine (69) of an act enti-
tled 'An act to provide for the organization, government,
and powers of cities and villages,' approved March 1,
1879." (Session Laws, 1885, p. 162, ch. 20.)    The repeal-

ing clause designates section 69 in the same way. The argument against the invalidity of the act of March 10 is based upon the fact that section 69 of the law of 1879 was amended and the original section repealed, as already alluded to, by the legislature in 1881, and hence the title and repealing clause, in referring to 69 of the act approved March 7, 1879, as the section to be amended and repealed, was misleading. It has been held by this court that where the amendment to a statute is plain, and the intention of the legislature is so distinctly pointed out that there is no difficulty in ascertaining to what law it was intended to apply, it will not be held invalid merely because the section number of the original law and the amendment are apparently somewhat confusing. Thus, in 1879 the legislature passed an act entitled "An act concerning counties and county officers" (Session Laws, 1879, p. 353), which was carried into the Compiled Statutes of 1881 and 1885 as chapter 18. On March 30, 1887, a bill was passed and approved by the governor to amend section 25 of said chapter, which contained an emergency clause and repealed the original section. On the next day an act was passed to amend subdivision 2 of said section 25 and section 26, the title to the bill being "An act to amend the second division of sections 25 and 26, chapter 18, of the Compiled Statutes of 1885," etc. (Session Laws, 1887, p. 355, ch. 28.) The validity of this last enactment was called in question in *State v. Babcock*, 23 Neb., 128, upon the same ground now urged against the act of March 10, 1885, but the objection was overruled. The court in the opinion say: "Two questions are presented by the record: First, does section 25, as amended on the 30th day of March, 1887, take the place of section 25, chapter 18, Compiled Statutes of 1885? Second, is the amendment of section 25, passed and approved March 31, 1887, in conflict with section 11, article 3, of the constitution? As to the first proposition, the amendment took immediate effect upon its passage and was in force when the act referred to amending the second division of sec-

tion 25, chapter 18, was passed and took effect. It is true that the amendment did not date in the year 1885, but this would lead to no confusion, because the chapter amended is found in the compilation of 1885. This court has held heretofore that all that the law requires is that the amendatory statute shall be definite and certain as to the statute amended and germane to the title of the original act. And that may be accomplished as well by designating the chapter in the Compiled Statutes as by referring to the act by its title. The legislature alone decides upon the title of an act or an amendment thereto, and it will not be declared unconstitutional unless it is clearly so. (*Dogge v. State*, 17 Neb., 143.) In our view, therefore, the section intended to be amended is clearly pointed out, and is not void as being within the constitutional inhibition." The same doctrine was held and applied in *Fenton v. Yule*, 27 Neb., 758; *Baird v. Todd*, 27 Neb., 782; *State v. Partridge*, 29 Neb., 158. In the light of those adjudications we must hold that the act of March 10, 1885, under consideration, was not invalid by reason of its title or repealing clause, and that it repealed the act of March 2 of the same year. It follows that on the 18th day of August, 1886, the time the contract was made for the erection of the Kearney water-works, the city possessed the power to levy a tax not exceeding five mills on the dollar in any one year to pay for water supplied to the municipality under said contract. It is true subdivision 2 of said section 69 as amended by the act of March 10, 1885, contains a clause authorizing cities and villages "to levy any other tax or special assessment authorized by law," yet this general provision must give way to the special provision relating to levying a tax to pay for water furnished the city under contract. (*McCann v. McLennan*, 2 Neb., 286; *Albertson v. State*, 9 Neb., 429; *Richardson County v. Miles*, 14 Neb., 311.)

There is another piece of legislation yet to be noticed. On March 31, 1887, the legislature so amended said section 69 as to authorize a levy not exceeding seven mills

to pay for water supplied the city under contract. (Session Laws, 1887, p. 291.) This law was not upon the statute books when the ordinance of the city of Kearney granting the franchise in question was adopted, but section 69, as amended on March 10, 1885, was at that time in operation, which limited the rate of taxation to meet the contracted liability to five mills on the dollar for a single year. The law in force at the time of making the contract entered into and formed a part thereof. The subsequent amendment of 1887 does not purport to have a retrospective effect. It operates only prospectively; that is, it applies to contracts for water-works entered into subsequent to the legislation. The legislature could no more diminish the rate of taxation to pay for water supply, as to existing contracts, than it could increase the rate for that purpose. In either case such legislation would impair contractual rights, which is inhibited by the constitution. The amendment of said section 69 in 1887, we are, therefore, constrained to hold, had no retroactive effect, and did not take away the power of the city of Kearney existing at the time of its passage to meet the obligations into which it had theretofore entered. The proposition is too plain to call for the citation of authorities to sustain it.

It is developed by the record before us that after the amendment to section 69 on March 31, 1887, the system of water-works was enlarged by the extension of pipe lines and the putting in of 106 additional hydrants. It is insisted that the contract to pay for the forty-five original hydrants is governed by the act of March, 1885, and the council should levy a seven-mill tax under the act of 1887, if that amount be necessary, to pay the rental on the 106 additional hydrants. The answer to this contention is that the original ordinance granting the franchise in express terms required the extension to be made, and the putting in of additional hydrants and the amount of rental to be paid therefor by the city. All the water was supplied to the city under one contract entered into

prior to the act of 1897; hence the limit of taxation to pay for the use of any of the hydrants is not controlled by said law, but by the statute in force when the franchise was granted.

Another suggestion contained in the brief of counsel for relator is that "by making the original contract, by requiring extensions, by accepting the works and using the water supply for ten years under the several acts and amendments granting enlarged powers and extended privileges, the city promised to discharge its duties, and by accepting the benefits of these several acts of the legislature, and of the contracts made under them, the city must be held to do equity and pay its obligations." Municipal officers can only exercise such powers, as are conferred by statute. They cannot ratify an unauthorized act so as to make it valid. The city council of the city of Kearney could not by any acts of ratification bind the city to levy a tax in excess of the rate provided by law. (*Gutta Percha & Rubber Mfg. Co. v. Village of Ogalalla*, 40 Neb., 775.) This is a legal action, and relator can thereby enforce merely its legal or statutory rights. The equitable doctrine invoked by the relator, that the city must pay for the benefits received, and the authorities cited in the brief in support thereof, are not applicable to the case before us.

It is suggested by the respondents that had only a five-mill tax been levied annually in the past to pay the water rental, then the writ should be granted for that sum to pay for the water during the present year; but that as from 1888 to 1892, inclusive, a levy of seven mills annually was made, and a levy of nine mills was imposed for the years 1893, 1894, and 1895, and paid, instead of the legal limit of five mills, the relator has received already an amount in excess of what it is entitled to under the law, more than sufficient to pay the hydrant rental for the year 1896, and the writ should accordingly be denied. The argument is somewhat novel, but it lacks merit. The levies made and the amounts paid in excess

of law clearly constitute no defense to this application. A peremptory *mandamus* will issue requiring the levy of five mills on the dollar of the assessed valuation of the property in the city of Kearney to pay the rental of hydrants for the use of the city.

WRIT ALLOWED.