PAUL HANSON ET AL., APPELLEES, V. THOMAS GASS ET AL., APPELLANTS.

FILED APRIL 6, 1936. No. 29727.

*William H. Wright, Attorney General, Milton C. Murphy* and *Robert D. Flory,* for appellants.

*Dorsey, Baldrige & Chew, contra.*

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY, PAINE and CARTER, JJ.

DAY, J.

Several holders of licenses to sell at retail alcoholic liquors under subsection C, subdivision 5, of section 26 of the liquor control act (Laws 1935, ch. 116, Comp. St. Supp. 1935, ch. 53, art. 3) instituted this suit to secure an injunction against the defendants, members of the Nebraska state liquor control commission and its agents, to restrain them from preventing said licensees from selling beer and alcoholic liquors other than beer in the same room or premises

described in their respective licenses. The trial court permanently enjoined and restrained the defendants from prosecuting plaintiffs for selling all kinds of alcoholic liquors including beer at their licensed premises, and from requiring plaintiffs to sell beer and other alcoholic liquors except beer in different or separate rooms or premises. The members of the commission have appealed.

The appellees applied for and received licenses in accordance with the procedure set forth in sections 82 and 83 of the Nebraska liquor control act (Laws 1935, ch. 116) which provide, in substance, that applicants "for license to sell alcoholic liquors, including beer regardless of alcoholic content, at retail by the drink," in any city or village, shall file with the local governing body a sworn application setting forth, among other things, "the location and description of the premises or place of business which is to be operated under such license;" that the local governing body shall, after published notice, act upon the same, and, if it approves, issue the license in triplicate and forward it to the commission, which, in case no protest is filed within three days, shall countersign and return the same to the municipal clerk for delivery to the applicant.

The appellees having complied with all requirements of the law, their licenses were duly issued and delivered to them, and they have since operated thereunder. Later on, however, the commission and its agents, notwithstanding the language of the sections of the statute under which appellees were licensed as aforesaid, made known their purpose to arrest and prosecute them unless they would abandon the right therein granted to licensees to sell alcoholic liquors, including beer, without regard to alcoholic content, in their respective licensed premises, and make choice to sell therein beer only, or other kinds of alcoholic liquors (not including beer) only.

The appellants rely upon section 3, ch. 116, Laws 1935, as providing for the separate sale at retail of beer and alcoholic liquors other than beer, and preventing the sale of both beer and alcoholic liquors other than beer at the same

place. Is this section so inconsistent with the provisions of sections 25 (d), 26 (5) C, 82 and 83 of the same act as to render them inoperative?

In order to discuss the questions presented in an understanding manner, it seems advisable to quote these sections as far as applicable. Section 3: "The legislature further declares the public policy of this state to be separate sale at retail of beer and alcoholic liquors other than beer: Provided, nothing herein shall prevent any retail licensee from holding licenses for both the sale of beer and of alcoholic liquor other than beer, if the same are conducted as separate businesses and sold in separate and distinct places or premises. The legislature further declares the public policy of this state to be that beer and all other alcoholic liquors, except beer, shall be sold and dispensed at retail in separate and distinct rooms or premises: Provided, however, the same licensee shall be eligible to be the recipient of both a retail beer license and a retail license to sell alcoholic liquors except beer, if the retail businesses so licensed are operated in separate and distinct rooms or premises. The legislature further declares the public policy of this state to be that no license for the sale of alcoholic liquors, except beer, shall be granted to any applicant making application therefor outside the corporate limits of any city or village within this state, save and except as provided in section 46 of this act."

The other sections of the act which the appellees rely upon provide, in so far as pertinent: Section 25 (d): "A retailer's license shall allow the licensee to sell and offer for sale at retail either in the original package or otherwise, as therein prescribed, in the premises specified in such license, alcoholic liquors or beer regardless of alcoholic content, for use or consumption, but not for resale in any form."

Section 26 (5) C: "Alcoholic liquors within the corporate limits of cities and villages, for consumption on the premises and off the premises (sales in original packages only), the sum of $250.00."

Section 82: "Any applicant for license to sell alcoholic liquors, including beer regardless of alcoholic content, at retail by the drink within the corporate limits of any city or village within this state shall first submit to the local governing body thereof an application under oath stating: * * * (6) The location and description of the premises or place of business which is to be operated under such license; * * * (7) A statement whether applicant has made similar application for a similar other license on premises other than described in this application, and the disposition of said application; * * * In addition to the foregoing information, such application shall contain such other and further information as the state commission or the local governing body may, by rule or regulation not inconsistent with law, prescribe."

Section 83: "All original and renewal applications for license to sell alcoholic liquors, including beer regardless of alcoholic content, at retail by the drink within the corporate limits of cities or villages shall be filed in each instance with the municipal clerk of the local governing body at least fifteen days before the hearing thereon is had."

The Nebraska state liquor control commission, of which the defendants are members, have construed the act to require that beer and alcoholic liquors, other than beer, be sold in separate places. Such a ruling was the cause of this suit. The rule adopted and promulgated is as follows:

"The Nebraska liquor control commission has carefully considered the provisions of H. R. 128 covering the sale of beer and other alcoholic liquors; the opinion of the attorney general construing the various sections of the act on this question, and the able presentation of the question by interested parties. Section 3 is the main section dealing directly with this question and reads as follows: (Omitted because heretofore set out in this opinion).

"It is contended by some that sections 25 and 26, and other sections of the act, are so directly and clearly in conflict with section 3 as to abrogate the provisions of section 3. Section 25, however, apparently distinguishes in a way,

between beer and other alcoholic liquors, as 25 (d) states, 'a retailer's license shall allow the licensee to sell * * * alcoholic liquors or beer.' Section 26 is the section that is chiefly in conflict with other sections throughout the statute, including section 3, and sections providing the procedure for obtaining licenses.

"The commission, in construing section 26, in view of these various conflicts, can only hold that this section 26 is controlling only as to the amount of license fees, and the various kinds of licenses.

"Sections 4 and 97, and other provisions of the liquor act, authorize the commission to adopt rules and regulations to control the manufacture, distribution, and sale of alcoholic liquors except as specifically delegated in this act. After a careful consideration of the entire act, and assisted by the opinion of the attorney general, the commission has come to the conclusion that while there is considerable question as to the conflict between section 3 and other sections of the liquor act, particularly section 26, that in our opinion these conflicts are not irreconcilable. It will be noted that section 3 provides that licenses for the sale of beer and other alcoholic liquors may be granted to the same person, but again specifically says, 'If the same are conducted as separate businesses and sold in separate and distinct places or premises.'

"The duty of the commission is to carry out to the best of its ability the will of the people as expressed by the legislature. We are unable to come to the conclusion that the provisions of sections 25 and 26, and other sections of the act, justify the complete repudiation of section 3 and that, at least until a judicial decision on these conflicting sections is available, the commission is bound to respect the plain instructions of the legislature as expressed in said section 3.

"The Nebraska liquor control commission therefore rules that the sale of beer and the sale of alcoholic liquor other than beer must be conducted as separate businesses and be sold in separate and distinct premises, places, or rooms not

to be connected by openings used by the public, and that any violation thereof shall be illegal and subject to the general penalty provided for the violations of the liquor control act, and the revocation of the licenses of any licensee guilty of such violation." This is the administrative construction of the statute which we are to consider.

The city of Omaha, under the provisions of the Nebraska liquor control act, voted for the sale of alcoholic liquors at retail. Thereafter, the plaintiffs applied to the local governing body, the city commission, which approved the applications, and thereafter the licenses were issued by the Nebraska liquor control commission. The licenses issued were under the provisions of sections 25 (d), 26 (5) C, 82 and 83 of the Nebraska liquor act. Section 25 (d) has been set out above, and states that a retailer's license shall permit the sale of alcoholic liquor or beer regardless of alcoholic content. Section 26 permits the sale of alcoholic liquors. Section 82, also quoted, uses the language: "Any applicant for license to sell alcoholic liquors, including beer regardless of alcoholic content, at retail by the drink." Section 83 uses this language: "All original and renewal applications for license to sell alcoholic liquors, including beer, regardless of alcoholic content," shall file application with the municipal clerk. These excerpts from the act, together with other sections which are quoted herein, indicate that the act was not a harmonious whole, each part consistent with the others. From a legislative history of the act, we find that it was before the legislature for a long time and called for several conference committees for the House and the Senate. This probably accounts for some of the confusion, for sections were added and sections deleted which render inconsistencies.

The plaintiffs contend that since they were issued a license under section 26 (5) C, and hereinafter referred to as a class C license, which is for the sale of alcoholic liquors for consumption on the premises, this authorizes them to sell beer. The act, section 2, subdivision 5, defines terms used therein as follows: "The phrase 'alcoholic liquor' in-

cludes the four varieties of liquor above defined, 'alcohol, spirits, wine and beer' and every liquor or solid, * * * containing alcohol, spirits, wine or beer, and capable of being consumed as a beverage by a human being."

Considering these sections, it would seem to be without reasonable dispute that, under the definitions, a class C license would provide for the sale of alcoholic liquors including beer. Section 26 provides for the several classes and cost of licenses to be issued as follows, giving their substance:

(1) To manufacture alcohol and spirits........$1,000.00
(2) To manufacture beer and wine:
 A. Beer—according to daily capacity from $100 to............................................ 800.00
 B. Wines .................................................... 250.00
(3) For alcoholic liquor distributor's license, wholesale, "except beer"............................. 500.00
(4) Beer distributor's license, wholesale...... 250.00
(5) For a retailer's license:
 A. Beer, only, consumption on premises 100.00
 B. Beer, only, for consumption off the premises (sales in the original packages only), the sum of.......................... 25.00
 C. Alcoholic liquors within the corporate limits of cities and villages, for consumption on the premises and off the premises (sales in original packages only), the sum of.......................... 250.00
 D. Alcoholic liquors, including beer, regardless of alcoholic content, within the corporate limits of cities and villages, for consumption off the premises (sales in the original packages only), the sum of.................................... 150.00
 E. Alcoholic liquors without the corporate limits of cities and villages, in counties mentioned in section 46 of this act, for consumption off the

 

premises (sales in original packages
only) ............................................................ 150.00

F. Provides for sale of beer without the
corporate limits of cities and villages,
for consumption on the premises........ 25.00

No doubt can exist that the legislature provided for licensees to sell either beer or other alcoholic liquor separately, if the licensee desired. But class C is a special provision for sale of alcoholic liquors for consumption on the premises. It is a license differing from all others. It cannot be issued except in cities and towns which have voted for it.

These sections clearly provide for the issuance of a license for the retail sale, by the drink, of "alcoholic liquors, including beer regardless of alcoholic content." They are the only sections in the act that provide a procedure by which the type of license described in subdivision (5) C of section 26 can be applied for or granted. That subdivision does not contain the words "including beer regardless of alcoholic content" which occur in sections 82 and 83, but the definition of "alcoholic liquor" in section 2 (5) of the act, as including beer along with alcohol, spirits and wine, supplies the place of those words, which in sections 82 and 83 simply make explicit the fact that licenses applied for and issued under those sections were intended to grant to licensees the privilege of selling beer by the drink along with the other forms of alcoholic beverages.

Sections 82 and 83 of the act are complete within themselves, and they provide specifically the form of the application for a license to sell "alcoholic liquors, including beer * * * at retail by the drink," and the procedure whereby the license is granted and issued to the applicant. The application must contain "the location and description of the premises or place of business which is to be operated under such license" (sec. 82 [6]), and the notice of the time and place of hearing on the application before the local governing body, required by section 83 to be published, must contain "the legal description of the premises sought to be licensed."

Section 49 of the act says: "Retail licenses issued hereunder apply only to the premises described in the application and in the license issued thereon, and only one location shall be so described in each license."

Sections 82 and 83 are the specific and concrete provisions, and the only provisions, of the liquor control act that govern the issuance of the licenses involved in the case at bar, and which define their scope. They unquestionably authorize the licensee to sell "alcoholic liquors, including beer," in the premises described in the application and the license; that is, to sell beer and the other kinds of alcoholic liquor in the same premises. It would be impossible to read into these sections a provision to the effect that beer could not be sold in the licensed premises, or that the other kinds of alcoholic liquor could not be sold therein along with beer, without destroying their entire structure and purport, and giving them a meaning exactly opposite to that which they now convey.

But the real controversy arises over the construction of section 3 of the liquor control act, which has been quoted in the beginning. Section 3 is not legislative either in substance or form, but is merely a declaration of policy in the nature of a preamble. Although it appears as a section of the act, it does not change the provisions of the act. It declares that it is the public policy of the state to separate the sale at retail of beer and alcoholic liquors other than beer. It also provides that the same person may have a license to sell both if the sale is conducted as separate businesses and sold in separate and distinct places or premises. This is a most unusual and fantastic legislative pronouncement. Its like is not found in the books. However, it seems that what the legislature does in positive and specific provisions of the law as enacted is not changed by a preliminary declaration as to public policy. It was held in *State v. McKune*, 215 Wis. 592, 255 N. W. 916, as follows: "Legislative declaration of the purpose of a statute is not controlling except to the extent disclosed on the face of the act or inferable from its operation."

The principle just stated is illustrated in *Coulter v. Pool,* 187 Cal. 181, 201 Pac. 120, wherein the supreme court of California said: "A legislative declaration, whether contained in the title or body of a statute, that the statute was intended to promote a certain purpose, is not conclusive on the courts and they must inquire into the real, as distinguished from the ostensible, purpose of the statute." Along the same line, it was held in *Brahmey v. Rollins,* 179 Atl. (N. H.) 186, that "legislative policy is law only to extent that enactments incorporate such policy." And in *Cantor v. Sachs,* 18 Del. Ch. 359, 162 Atl. 73, it was held: "That court is cognizant of legislature's purpose in enacting language does not justify finding that such purpose was expressed when language used does not justify it." And in *Wade v. Madding,* 161 Tenn. 88, 28 S. W. (2d) 642, it was said: "It is a reasonable rule of construction that, when the legislative expression of a general intent conflicts with a particular intent subsequently expressed, the latter will prevail." The same principle is adhered to in *Doemker v. City of Richmond Heights,* 322 Mo. 1024, 18 S. W. (2d) 394, as follows: "In cases of doubt as to the proper construction of * * * statute, resort must be had to the preamble or recitals, for the purpose of ascertaining the legislative intent. But where the enacting part of the statute is unambiguous, its meaning will not be controlled or affected by anything in the preamble or recitals."

In view of the foregoing authorities, we conclude that the declaration of policy or purpose in section 3 of the act is not substantive law, and that it could only be of use to determine the intent of the legislature in case sections 82 and 83 were ambiguous with respect of the right of a holder of license C thereunder to sell alcoholic liquors, including beer regardless of alcoholic content, in the licensed premises. The only ambiguity that exists in this connection is when an attempt is made to give section 3 the effect of substantive law. Sections 82 and 83 of themselves are not ambiguous on the question. They could not be clearer or more explicit with respect to the retail sale of alcoholic liquors including

beer by the drink. These sections provide for the issuance of licenses. They are vital parts of the operation of the statute and must be taken as the authoritative expression of legislative intent and are not to be overcome or even rendered ambiguous by a mere declaration of policy in a preceding section, which the legislature abandoned or ignored when they enacted the substantive and specific provisions of the act.

But even if section 3 be accorded the force of law, when it is in reality only a mere declaration of policy, it would nevertheless be, as has been shown, in direct and irreconcilable conflict with sections 82 and 83; both could not stand, and one or the other must yield. Section 3 is general in its terms, while sections 82 and 83 are positive and specific on the subject with which they deal, and they are subsequent to section 3 in their arrangement and numerical order in the act. The supreme court of Nebraska has laid down the rules by which the courts should be guided in such cases. In *Omaha Real Estate & Trust Co. v. Kragscow*, 47 Neb. 592, 66 N. W. 658, this court said: "Where two sections or portions of the same statute, passed at the same time, are inconsistent with and repugnant to each other, so much so that both cannot be enforced, the last section, or last words, will be allowed to prevail and the section or words in conflict therewith held to be repealed." The exact situation existing in the case from which the above rule is quoted is explained in paragraph 7 of the syllabus, as follows: "Sections 5 and 41 of chapter 43, Revised Statutes of 1866, entitled 'Real Estate,' were enacted at the same time, as parts of the same statute, and being in some of their provisions so repugnant that both could not be executed, inasmuch as they conflicted, the last section—41—prevailed and the other was repealed." This rule was first announced in *Albertson v. State*, 9 Neb. 429, 2 N. W. 742, in which it was held: "Where there is an irreconcilable conflict between different sections or parts of the same statute, the last words stand, and those which are in conflict therewith are, so far as there is a conflict, repealed."

Another rule of equal force in this state is announced in the following decisions of this court, and it stands today unaltered: "Specific provisions of a statute relating to a particular subject will prevail over general provisions in the same enactment." *State v. City of Kearney,* 49 Neb. 325, 68 N. W. 533. "The several sections and provisions of a legislative act should be construed together, and harmonized if possible; and, if there is a conflict in them, general expressions must give way to special and specific provisions." *State v. Nolan,* 71 Neb. 136, 98 N. W. 657. "Special provisions in a statute in regard to a particular subject control general provisions." *Mancuso v. State,* 123 Neb. 204, 242 N. W. 430.

Sections 82 and 83 are the specific and particular provisions, and the only provisions, of the act by which the practical procedure for applying for and procuring licenses for the retail sale of alcoholic liquors, including beer, are prescribed and governed. By the language of those sections the licensee is granted the undoubted right to sell all forms of alcoholic liquor, including beer, in the premises described in the application and the license, without any restriction or exception as to different or separate premises. Section 3, if accorded everything that could be claimed for it, is nothing more than a general provision to the effect that beer and the other kinds of alcoholic liquor cannot be sold except on separate and distinct premises.

If given the construction contended for by appellants, section 3 would be in irreconcilable conflict with sections 82 and 83, and this rule would be applicable. While the last rules discussed have never been departed from in this jurisdiction, and are in accord with the weight of authority, it is not necessary to invoke them here except by way of argument. This court is of the opinion that section 3 is a declaration of legislative policy in the nature of a preamble, and does not change, modify, or conflict with sections 82 and 83 of the liquor control act, and the judgment of the trial court is

AFFIRMED.

PAINE and CARTER, JJ., dissent.